# EXHIBIT 1



A TRUE COPY
TESTE: _____
CIRCUIT COURT KANAWHA COUNTY, W.VA.

CASE  08-MISC-421      KANAWHA

AMERICAN FEDERATION OF TEACHER vs. KANAWHA COUNTY BOARD OF EDUCAT

LINE   DATE      ACTION

1  11/26/08  # F FEE; RCPT 437739; $145.00; CASE INFO SHEET; PETITION W/EXH'S
2  12/01/08  SM SUM W/RET (11/26/08 SP) AS TO KANAWHA CO SCHOOLS
3  12/01/08  SM SUM W/RET (11/26/08 SP) AS TO RONALD DUERRING
4  12/01/08  SM SUM W/RET (11/26/08 SP) AS TO KANAWHA CO BOARD OF EDUATION
5  12/02/08  # NOT OF HRG W/COS (12/10/08 @ 1:30 PM)
6  12/08/08  # MOT FOR PRELIMIN INJ W/COS
7  12/08/08  # MEMO OF LAW IN SUPP OF MOT W/COS
8  12/08/08  # # MOT FOR WAIVER OF INJ BOND OR FOR SETTING BOND AT NOMINAL
9                AMOUNT W/COS
10 12/08/08  # MEMO IN SUPP OF MOT W/COS

## CIVIL CASE INFORMATION STATEMENT
### CIVIL CASES
(Other than Domestic Relations)
In the Circuit Court of, Kanawha County, West Virginia

CASE STYLE

| Petitioner(s) | Case # |
|---|---|

**AMERICAN FEDERATION OF TEACHERS -**
**WEST VIRGINIA, AFL-CIO, JUDY HALE,**
its President, **FREDERICK ALBERT, CYNTHIA**
**PHILLIPS** and **GREGORY DODD**, members and
representatives of similarly situated individuals,

**Judge:**

v.

| Respondent(s) | Days to Answer | Type of Service |
|---|---|---|
| **KANAWHA COUNTY BOARD OF** | 30 | |
| **EDUCATION** | | |
| c/o Ronald Duerring, Ed.D., Superintendent | | |
| 200 Elizabeth Street | | |
| Charleston, WV 25311 | | |
| **KANAWHA COUNTY SCHOOLS** | 30 | |
| c/o Ronald Duerring, Ed.D., Superintendent | | |
| 200 Elizabeth Street | | |
| Charleston, WV 25311 | | |
| **RONALD DUERRING, Ed.D.,** | 30 | |
| **SUPERINTENDENT** | | |
| Kanawha County Schools | | |
| 200 Elizabeth Street | | |
| Charleston, WV 25311 | | |

| Plaintiff: American Federation of Teachers - West Virginia, et al. Defendant: Kanawha County Schools, et al. | CASE NUMBER: |
|---|---|

## II. TYPE OF CASE:

| ☐   General Civil | ☐   Adoption | ☐   Civil Appeal from Magistrate Court |
|---|---|---|
| ☐   Mass Tort Litigation | ☐   Mental Health | X   Miscellaneous Civil Petition |
| ☐ Guardianship/Conservatorship | ☐   Administrative Agency Appeal | ☐ Other(specify):_____ _____ |

## III. JURY DEMAND:   NO

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR): Immediately _____

DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY? ☐  YES   X   NO

IF YES, PLEASE SPECIFY
☐ Wheelchair
☐ Interpreter or other auxiliary aid for the hearing impaired
☐ Reader or other auxiliary aid for the visually impaired
☐ Spokesperson or other auxiliary aid for the speech impaired
☐ Other:_____

Attorney Name: Mark W. Carbone
Firm: Carbone & Blaydes, P.L.L.C.
Address: 2442 Kanawha Boulevard, East
Telephone:  (304) 342-3650
Dated:  November 26, 2008

Representing:
X Plaintiff      ☐ Defendant
☐ Cross-Complainant  ☐ Cross-Defendant

Signature

☐ Proceeding Without an Attorney

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                                        Civil Action No. _08-MISC-42_ )

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### SUMMONS

To the above-named Respondent:      Ronald Duerring, Ed.D., Superintendent
                                     Kanawha County Schools
                                     200 Elizabeth Street
                                     Charleston, WV 25311

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and

required to serve upon Jeffrey G. Blaydes, Petitioner's attorney, whose address is 2442 Kanawha

Boulevard, East, Charleston, WV, 25311, an answer, including any related counterclaim you may

have, to the complaint filed against you in the above styled civil action, a true copy of which is

herewith delivered to you. You are required to serve your answer within **30** days after service of

this summons upon you, exclusive of the day of service. If you fail to do so, judgement by

default will be taken against you for the relief demanded in the complaint and you will be

thereafter barred for asserting in another action any claim you may have which must be asserted

by counterclaim in the above styled action.

Dated: _11-26-08_

Cathy S Gatson
By CWood
Clerk of Court

FILED

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2008 NOV 26  AM 9: 48

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

*CWCopy*

CATHY S. GATSON CLERK
KANAWHA CO. CIRCUIT COURT

Petitioners,

v.                                               Civil Action No. *08-MISC-421*

*King*

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

## VERIFIED PETITION FOR WRIT OF MANDAMUS,
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

This is an action for a Writ of Mandamus, Declaratory Judgment and injunctive relief to

immediately and permanently preclude Respondents' implementation and administration of the

county board of education random drug screening policy, or "Random Selection Policy," that

violates, on its face, the state and federal constitutions, including protections against unlawful

search and seizure pursuant to the Fourth Amendment of the United States Constitution and

Constitution of the State of West Virginia and violation of an individual's Constitutional right to

privacy.

### I. JURISDICTION

1.      Jurisdiction and venue is proper in the Circuit Court of Kanawha County pursuant

to West Virginia Code §29A-4-2; §53-1-2; and §53-5-3.  Additionally, this policy violates 42

U.S.C. 1983 and state regulations governing bidding procedures for Kanawha County Schools.

### II. PETITIONERS AND RESPONDENTS

2.      Petitioner, American Federation of Teachers - West Virginia, AFL-CIO ("AFT"),

is an unincorporated labor organization which represents professional school personnel within

the State of West Virginia, and is the duly recognized representative for certain teachers and

other employees working in the education field in Kanawha County, West Virginia.

3.    Petitioner, Judy Hale is the President of the AFT and is authorized to act in the best interests of its membership.

4.    Petitioners Fred Albert, Cynthia Phillips and Greg Dodd are members of the AFT and bring this action on their own behalf and on behalf of each and all other persons similarly situated.

A.    At all times relevant to this action, Petitioner Frederick Albert has been employed by the Kanawha County Board of Education.  His primary duties include instruction of students as a sixth grade math teacher.  He has been a public school teacher for approximately nineteen (19) years.  He holds a continuing contract to teach in Kanawha County Schools pursuant to West Virginia Code § 18A-2-2.

B.    At all times relevant to this action, Petitioner Cynthia Phillips has been employed by the Kanawha County Board of Education.  Her primary duties include instruction of students in Special Education.  She has been a public school teacher for approximately thirty (30) years.  She holds a continuing contract to teach in Kanawha County Schools pursuant to West Virginia Code § 18A-2-2.

C.    At all times relevant to this action, Petitioner Gregory Dodd has been employed by Kanawha County Board of Education.  His primary duties include instruction of students in high school chemistry.  He has been a public school teacher for approximately thirty seven (37) years.  He holds a continuing contract to teach in Kanawha County Schools pursuant to West Virginia Code § 18A-2-2.

5.    Respondents Kanawha County Schools and the Kanawha County Board of Education exist by virtue of West Virginia Code § 18-5-1, et seq. and is required to perform its duties in compliance therewith and other statutory provisions.  Respondent is a government or state actor.

6.    Respondent, Ronald Duerring, Ed.D., is the Superintendent of Kanawha County

Schools.  He is required to perform his duties consistent with <u>West Virginia Code</u> § 18-4-1 <u>et</u>
<u>seq</u>.

## III. FACTS

7.      Petitioners incorporate by reference Paragraphs 1 through 6 above, as if fully set
forth herein.

<u>Old Drug Testing Policy: "Employee Drug Use Prevention Policy"</u>

8.      Prior to October 15, 2008, Respondents had in place an "Employee Drug Use
Prevention Policy" ("Old Policy"; Exhibit 1) which contained extensive authorization for drug
testing of employees.

9.      The Old Policy applied to "all Kanawha County Schools facilities and property, to
all faculty, staff, students, and visitors to school property."  (81.06)

10.  Under the Old Policy, Respondents were authorized to conduct "Other Substance
Tests Of Existing Employees."  The Old Policy stated,

> Kanawha County Schools may periodically conduct substance tests based on
> breath, saliva, urine, blood and/or hair samples under circumstances noted below.

Drug testing of employees permitted by the Old Policy included:

> A.      "Pre-employment Testing" (81.09);
>
> B.      "For Cause" or Reasonable Suspicion Testing (81.11);
>
> C.      "Missing Substances" Testing (81.12);
>
> D        "Fitness for Duty" (81.13);
>
> E.      "Promotion and Transfer Testing" (81.14);
>
> E.      "Return to Duty Testing" (81.15).

11.      Under the Old Policy, possession, distribution or use of drugs or being under the
influence of drugs or alcohol could expose employees, faculty and staff to discipline, including
termination.  (81.07)

12. Under the Old Policy, "Collection of Samples" occurred as follows:

> Testing samples will be collected by a qualified individual only, whether or not

3

such individuals are employees of an outside testing laboratory. Collection of samples will be performed under reasonable and sanitary conditions. The chain of custody of the sample will be recorded, and this record should be retained. (81.18)

13. Under the Old Policy, "primary responsibility" for "Implementation" is given to the Superintendent, Administrative Assistant for Human Resources, Office of the General Counsel, Lead Nurse, and Director of Counseling and Testing. (81.22)

14.     The Old Policy did not include random drug or random selection testing.

New Policy: "Employee Drug Use Prevention Policy" with "Random Selection Testing"

15.     On October 15, 2008, Respondents amended the existing "Employee Drug Use Prevention Policy" ("New Policy", Exhibit 2).   The New Policy continues to include five of the drug tests described above – and now authorizes Respondents to randomly drug test  employees if their positions are categorized as "safety sensitive positions."

16.     The New Policy also adds "Post-Accident Testing" in instances where reasonable cause exists to believe an employee has caused an on-the-job inquiry that is considered recordable under OSHA guidelines.  The New Policy also removes drug testing in instances of "Promotion and Testing."

17. The New Policy overly expands the positions defined as "safety sensitive", exposing employees who are  not in "safety sensitive" positions to unconstitutional random selection screening.  The new definition provides:

81.05.6 [sic] Safety Sensitive" Positions Defined. The Kanawha County Board of Education has several positions which are considered safety sensitive. In general, these are positions which involve the care and supervision of students or where a single mistake by such employee can create an immediate threat of serious harm to students, to him or herself or to fellow employees. Safety sensitive positions shall include, but not be limited to, the following positions:

81.05.6.1 Superintendent

81.05.6.2 Deputy Superintendent

81.05.6.3 Assistant Superintendent 81.05.6.4 Administrative Assistant 81.05.6.5 Director of Safety

4

81.05.6.6 Director of Maintenance

81.05.6.7 Principal and Assistant Principal.

81.05.6.8 Counselor.

81.05.6.9 Teacher.

81.05.6.10 Coach

81.05.6.11 Aide, including Autism Mentor, Braille and Sign Language Specialist and Paraprofessional.

81.05.6.12 Bus Operator.

81.05.6.13 Cabinetmaker.

81.05.6.14 Carpenter.

81.05.6.15 Chief Mechanic.

81.05.6.16 Child Care Worker i.e., day-care, third base or on-deck worker

81.05.6.17 Cook and Cafeteria Manager.

81.05.6.18 Crew Leader.

81.05.6.19 Custodian.

81.05.6.20 Electrician.

81.05.6.21 Electronic Technician.

81.05.6.22 Foreman.

81.05.6.23 General Maintenance.

81.05.6.24 Glazier.

81.05.6.25 Groundsman.

81.05.6.26 Handyman.

81.05.6.27 Heating and Aix Conditioning Mechanic.

81.05.6.28 Heavy Equipment Operator.

81.05.6.29 Locksmith.

81.05.6.30 Lubrication Man.

81.05.6.31 Machinist.

81.05.6.32 Mason.

81.05.6.33 Mechanic and Mechanic Assistant.

81.05.6.34 Painter.

81.05.6.35 Plumber.

81.05.6.36 Printing Operator and Supervisor.

81.05.6.37 Roofing/Sheeting Metal mechanic.

81.05.6.38 School Bus Supervisor.

81.05.6.39 Supervisor of Maintenance.

81.05.6.40 Supervisor of Transportation.

81.05.6.41 Truck Driver.

81.05.6.42 Warehouse Clerk.

81.05.6.43 Welder.

81.05.6.44 Anyone who operates a county-owned vehicle.

81.05.6.45 Anyone whose job duties include administering medication to students.

81.05.6.46 Anyone who drives his or her own vehicle on school business more than an average of 10 miles per week.

81.05.6.47 Any other person who volunteers to be subject to this policy.

81.06 Applicability: This policy applies to all Kanawha County Schools' facilities and property, to all faculty, staff, students, and visitors to school property. All employees are responsible to be familiar with and comply with this policy and companion procedures.

18.    The new definition of "safety sensitive" positions is overly-broad and unconstitutionally exposes employees in positions that are not "safety sensitive" to random drug screens.  Respondents have failed to establish that employees in all the positions now identified

6

as "safety sensitive" positions have jobs that are so safety sensitive that "a single mistake . . . can create an immediate threat of serious harm to students, to [the employee], or to fellow employee."

19. Under the New Policy, all employees now identified as holding safety sensitive positions will be subject to "Random Selection Testing." This provision indicates:

> All individuals who are employed in Safety Sensitive Positions are subject to random testing for substances. Where random testing is prohibited or restricted by applicable federal, state or local statute or regulation, Kanawha County Schools will conform to all applicable laws and regulations notwithstanding the provisions of this policy.

(81.15).

20. The method for determining how individuals will be selected for screening has not been made available to Petitioners.

21. On our about November 20, 2008, Respondents issued a policy entitled "Kanawha County Schools Random Drug Testing Plan." ("Plan", Exhibit 3).

22. The Plan does not indicate who will collect such samples; and where such samples will be collected. Respondents fail to indicate whether split samples will be maintained and whether split sample testing will be permitted.

23. The New Policy and Plan fail to adequately protect the privacy interests of those subject to random and other drug testing. The "Confidentiality of Test Results" provides only that:

> Confidentiality of Test Results. All test results will be handled on a confidential basis and will be available only to the Kanawha County Schools personnel who have a need to know such results. The Administrative Assistant, Human Resources or his/her designated representative will determine who will have access to these records.

7

Nothing in this New Policy identifies or limits who would "have a need to know" the results of an employee's drug or alcohol screens. Respondents fail to ensure that the results of testing will, in fact, remain confidential. (81.21) The Plan states that "all reasonable steps" will be taken to maintain "confidentiality of information."

24.     The Plan does not require that sampling be done privately. The Plan indicates that an unidentified "observer" may observe random sample collections when the employee urinates where there is a belief that "the donor has or will attempt to substitute or adulterate the sample."

25.     Neither the New Policy or Plan identifies who will cover classes for teachers or duties of other personnel if random drug testing occurs.

26.     Upon information and belief the actions of teachers and others who hold positions now defined as "safety sensitive" by the New Policy have not caused harm to any students as a result of drug or alcohol use.

27.     Respondents have failed to properly bid out the random test procedures as required by its own policy.

28.     The New Policy authorizes random, compelled intrusions of the body of school teachers and personnel for fluids to be analyzed without a safety sensitive or exigent special need.

29.     According to the Plan, the New Policy will go into effect on January 1, 2009.

Respondents' Constitutional Violations

30.     The United States Constitution "protects the citizens against the State itself and all of its creatures – Boards of Education not excepted." West Virginia State Board of Education v.

8

Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

31.    The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 3, Section 6 of the West Virginia Constitution provides the same protections to the citizens of this State.   Mandatory drug testing of public employees is a "search" which implicates the Fourth Amendment and Article 3, Section 6 of the West Virginia Constitution. The New Policy promulgated by Respondents permitting random selection screening of teachers and other non-safety sensitive personnel on its face violates the Fourth Amendment of the United States Constitution and Article 3, Section 6 of the West Virginia Constitution.  In particular, the New Policy authorizes random, compelled intrusions of the body of school personnel, including teachers, for fluids to be analyzed without safety sensitive or exigent special needs.

32.   The citizens of the State have a legally protected right of privacy from unwarranted intrusions.  Cordle v. General Hugh Mercer Corp., 174 W. Va. 321, 325 S.E.2d 111 (1984). Public school teachers and personnel are accorded this right.  Golden v. Board of Education of the County of Harrison, 169 W. Va. 63, 285 S.E.2d 665 (1981)

33.   Conducting random drug testing of individuals in positions that are not safety sensitive is a violation of that individual's constitutionally protected privacy rights under Twigg v. Hercules, 406 S.E.2d 502 (W.Va. 1990).  The New Policy promulgated by Respondents permitting random selection screening of teachers and other non-safety sensitive personnel violates, on its face, the constitutional privacy rights of those employees.

9

Respondents' Statutory Violations

34.     Pursuant to 42 U.S.C. 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable.  For the
> purposes of this section, any Act of Congress applicable exclusively to the District
> of Columbia shall be considered to be a statute of the District of Columbia.

35.     The implementation of the New Policy, which on its face offends the United

States and West Virginia Constitutions, will violate the provisions of 42 U.S.C. 1983.

Respondents' Policy Violations

36.     According to 126 C.S.R. 202, "Purchasing Procedures for Local Educational

Agencies  (8200), "all county boards of education" are bound by the policies contained therein.

37.     Pursuant to Title 126 C.S.R. 202, Respondents are required to bid out the

purchase of commodities or services.

38.     Respondents have failed to bid out the commodities and/or services that it will, or

has, purchased to implement the random drug testing program.   Thus, Respondents have

violated the purchasing procedure.

10

## IV.  CAUSES OF ACTION

A.      INJUNCTIVE RELIEF

Preliminary and Permanent Injunction

39.      Petitioners incorporate by reference Paragraphs 1 through 38 above, as if fully set forth herein.

40.      If such random drug screens of employees are not enjoined, the individuals being tested will suffer an irreparable invasion of their privacy.

41.      If such random drug screens of employees are not enjoined, the individuals being tested will be subjected to unconstitutional searches violative of the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution. Additionally, the right of privacy of those individuals will be violated.

42.      Respondents will violate or continue to violate its purchasing procedures and policies..

43.      If the random drug screening policy is not enjoined, Respondents will suffer no harm in foregoing such drug tests until this matter is decided by the Court.  Respondents have operated for some time without such authority and have not previously found it necessary to conduct random drug screens.  Furthermore, Respondents already have a broad program for drug testing under the Old Policy that has protected, and will continue to protect, its interests, as well as those of its students and teachers.

44.      Petitioners have a likelihood of success on the merits in this case because employees now identified as holding "safety sensitive" positions are clearly not engaged in safety

11

sensitive work.  Twigg v. Hercules Corporation, 185 W.Va. 155, 406 S.E.2d 52 (1990).  Nor are exigent circumstances present that constitute a special need for random testing.  Moreover, the actions of Respondents violate purchasing procedures.

45.     The public interest would be served by the granting of a temporary injunction because the public's interest in protecting the rights of privacy and  the rights to be free from unconstitutional searches will be upheld. Furthermore, the existing, expansive drug testing scheme under the Old Policy will protect the interests of all stakeholders.

46.     Finally, the protections afforded to tax payers will be served by enjoining the implementation of this policy prior to the unauthorized award of service or commodity contracts for the New Program.

Declaratory Judgment And/or Petition for Mandamus

47.     A declaratory judgment and/or writ of mandamus should issue because the "Employee Drug Use Prevention Policy" is unconstitutional on its face because it allows unconstitutional  searches and seizures of the bodily fluids of public school teachers and other individuals who are not engaged in safety sensitive positions or individuals without individualized suspicion.

48. A declaratory judgment and/or writ of mandamus should issue because the "Employee Drug Use Prevention Policy" is unconstitutional on its face because it violates the constitutionally protected privacy rights of those teachers who will be randomly screened and are not engaged in safety sensitive positions or individuals with individualized suspicion.

49.     A declaratory judgment and/or writ of mandamus should issue because Respondents have failed to properly bid this program as required by 126 C.S.R. 202.

12

## VI.  PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for the following relief:

a.    A preliminary and permanent injunction prohibiting Respondents from enforcing the "Employee Drug Use Prevention Policy" and from conducting testing of individuals' bodily fluids without particularized suspicion or probable cause;

b.    A declaratory judgment declaring that Respondents' "Employee Drug Use Prevention Policy" is unconstitutional on its face because it requires employees to relinquish their constitutional rights against unreasonable personal searches and seizures as a condition of their continued employment;

c.    A writ of mandamus ordering Respondents to comply with their nondiscriminatory constitutional and common law duties to respect employees' privacy and thus to suspend implementation of the "Employee Drug Use Prevention Policy";

d.    A writ of mandamus ordering Respondents to comply with their purchasing procedures as it relates to the Employee Drug Use Prevention Policy";

e.    That Petitioners be awarded their costs and attorneys' fees incurred in this matter and any and all such other relief as the Court deems appropriate.

> American Federation of Teachers - West
> West Virginia, AFL-CIO and Fred Albert,
> <u>Cynthia Phillips and Greg Dodd</u>,
>   By counsel

13

*Robert M. Bastress / Muc*

Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

*Jeffrey G Blaydes / Muc*

Jeffrey G. Blaydes (SBID #6473)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV 25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
 *Counsel for Petitioners*

*Mark W. Carbone*

Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV 25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
 *Counsel for Petitioners*

14

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE, its
President, FREDERICK ALBERT, CYNTHIA PHILLIPS,
GREGORY DODD and STEVEN SHAMBLIN, members
and representatives of similarly situated individuals,

        Petitioners,

v.                                      Civil Action No. _____

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

        Respondents.

### VERIFICATION OF JUDY HALE

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

    I, Judy Hale, President of the American Federation of Teachers - West Virginia, AFL-CIO, named Petitioner in the foregoing Petition for Writ of Mandamus, Declaratory Judgment and Injunctive Relief, having been first duly sworn, says the facts and allegations therein contained are true, except insofar as they are herein stated to be on information, and so far as they are therein stated to be on information, I believe them to be true.

                                          *Judy Hale*
                                     JUDY HALE

Taken, subscribed and sworn to before me this 25th day of November, 2008.

My commission expires ___March 11, 2018___.

                                   *Diana Kay Miller*
                                     NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIANA KAY MILLER
763 BULGER ROAD
ALKOL, WV 25501
My commission expires March 11, 2018

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE, its
President, FREDERICK ALBERT, CYNTHIA PHILLIPS,
GREGORY DODD and STEVEN SHAMBLIN, members
and representatives of similarly situated individuals,

        Petitioners,

v.                                 Civil Action No. _____

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

        Respondents.

## VERIFICATION OF FREDERICK ALBERT

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

    I, Frederick Albert, member of the American Federation of Teachers - West Virginia,

AFL-CIO, named Petitioner in the foregoing Petition for Writ of Mandamus, Declaratory

Judgment and Injunctive Relief, having been first duly sworn, says the facts and allegations

therein contained are true, except insofar as they are herein stated to be on information, and so far

as they are therein stated to be on information, I believe them to be true.

                                       *Frederick R. Albert*

      FREDERICK ALBERT

Taken, subscribed and sworn to before me this _25th_ day of November, 2008.

My commission expires ___March 11, 2018___.

                          *Diana Kay Miller*
                          NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIANA KAY MILLER
763 BULGER ROAD
ALKOL, WV 25501
My commission expires March 11, 2018

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE, its
President, FREDERICK ALBERT, CYNTHIA PHILLIPS,
GREGORY DODD and STEVEN SHAMBLIN, members
and representatives of similarly situated individuals,

        Petitioners,

v.                                         Civil Action No. _____

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

        Respondents.

### VERIFICATION OF CYNTHIA PHILLIPS

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

    I, Cynthia Phillips, member of the American Federation of Teachers - West Virginia,

AFL-CIO, named Petitioner in the foregoing Petition for Writ of Mandamus, Declaratory

Judgment and Injunctive Relief, having been first duly sworn, says the facts and allegations

therein contained are true, except insofar as they are herein stated to be on information, and so far

as they are therein stated to be on information, I believe them to be true.

                                  *Cynthia Phillips*
                                CYNTHIA PHILLIPS

Taken, subscribed and sworn to before me this 25th day of November, 2008.

My commission expires  March 11, 2001 .

                          *Diana Kay Miller*
                          NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIANA KAY MILLER
763 BULGER ROAD
ALKOL, WV 25501
My commission expires March 11, 2018

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE, its
President, FREDERICK ALBERT, CYNTHIA PHILLIPS,
GREGORY DODD and STEVEN SHAMBLIN, members
and representatives of similarly situated individuals,

        Petitioners,

v.                                      Civil Action No. _____

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

        Respondents.

### <u>VERIFICATION OF GREGORY DODD</u>

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

       I, Gregory Dodd, member of the American Federation of Teachers - West Virginia, AFL-

CIO, named Petitioner in the foregoing Petition for Writ of Mandamus, Declaratory Judgment

and Injunctive Relief, having been first duly sworn, says the facts and allegations therein

contained are true, except insofar as they are herein stated to be on information, and so far as they

are therein stated to be on information, I believe them to be true.

                                  _____
                                  GREGORY DODD

       Taken, subscribed and sworn to before me this ⟨25th⟩ day of November, 2008.

My commission expires ⟨March 11, 2018⟩_____.

                                  _____
                                  NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIANA KAY MILLER
763 BULGER ROAD
ALKOL, WV 25501
My commission expires March 11, 2018



## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2008 NOV 26  AM 9:48

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

Petitioners,

v.                                                           Civil Action No. _____

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### CERTIFICATE OF SERVICE

I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing

SUMMONS and VERIFIED PETITION FOR WRIT OF MANDAMUS, DECLARATORY

JUDGMENT AND INJUNCTIVE RELIEF, by hand delivery true copies, on this 26th day of

November, 2008, upon the following:

> Kanawha County Board of Education
> c/o Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV  25311
>
> Kanawha County Schools
> Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV  25311
>
> Ronald Duerring, Ed.D., Superintendent
> Kanawha County Schools
> 200 Elizabeth Street
> Charleston, WV  25311

James Withrow, Esquire
Kanawha County Board of Education
200 Elizabeth Street
Charleston, WV  25311

Mark W. Carbone

EXHIBIT 1

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

**81.01  Purpose.**  The safety and security of personnel, students, and visitors as well as property of Kanawha County Schools is of vital importance to the Kanawha County Board of Education.  The purpose of this policy is to create and maintain a drug and alcohol free work environment by identifying existing employees and potential employees, who use or abuse illicit drugs and/or abuse prescribed medications and/or alcohol.

**81.02  Scope.**  This policy is intended to apply to the classes and groups of employees listed herein.   This policy is intended to be supplemental to and not in substitution for Board of Education Policy Series G37 which is applicable only to Kanawha County Schools' transportation department.

**81.03  Policy Statement**.  The Kanawha County Board of Education is committed to a safe working environment, to making adequate provisions for the safety and health of its employees at their place of employment, and to the safety and health of the students we serve as well as the general public. The Kanawha County Board of Education regards its personnel as individuals as well as employees. Therefore, the Board believes that alcoholism and drug addiction are illnesses and should be treated as such. The Board further believes that employees who develop alcoholism or other drug addictions can be helped to recover and should be offered appropriate assistance. It is in the best interest of the employee and the Board that when alcoholism or drug addiction is present, it should be diagnosed and treated at the earliest possible date. Confidential treatment of the diagnosis and recovery process for alcoholism or drug addiction is essential.

The Kanawha County Board of Education recognizes that substance abuse in our nation and our community exacts staggering costs in both human and economic terms. Substance abuse can be reasonably expected to produce impaired job performance, lost productivity, absenteeism, accidents, wasted materials, lowered morale, rising health care costs, and diminished interpersonal relationship skills. The Kanawha County Board of Education and its employees share a commitment to create and maintain a drug-free workplace.

The Kanawha County Board of Education is responsible for the instruction and well-being of the students entrusted to its care. A consistent message needs to be communicated by the Board that the use

KANAWHA COUNTY BOARD OF EDUCATION POLICY
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

of illegal drugs, the abuse of alcohol, and the misuse of prescription drugs are unacceptable.

Provisions of the Federal Anti-Drug Act, 41 U.S.C.A. 0702, require federal grant recipients to establish a drug-free workplace. Employees must be provided with a statement notifying them of the prohibitions pertaining to controlled substances, consequences of violations, and compliance with the drug-free policy as a condition of employment. Employers must inform employees of drug-free requirements through an awareness program.

**81.04**  <u>**Policy Goals and Objectives.**</u>  It is the intent of the Board of Education, through its policy, procedures, and practices, to reduce the potential for:

**81.04.1**  The manufacture, possession, use, sale, distribution, dispensation, receipt, or transportation of illegal substances while on school property or while otherwise engaged in school business.

**81.04.2**  The theft, unauthorized use, or intentional mishandling or misuse of any medication and/or substance that is present on school property for the purpose of providing medication to students.

**81.04.3**  The consumption of alcoholic beverages on school property.

**81.04.4**  Being Under the Influence of Substances while on school property or while otherwise engaged in school business or during employment.

**81.04.5**  Performing duties while Under the Influence of Substances whether on or off Kanawha County Schools property.

**81.05**  <u>**Definitions.**</u>

**81.05.1**  <u>**Possession**</u>:  To have on one's person, in one's personal effects, in one's vehicle or otherwise under one's care, custody, or control.

**81.05.2**  <u>**Substance**</u>:  Any alcohol, drugs, other substances (whether ingested, inhaled, injected subcutaneously, or otherwise) that have known mind altering or function-altering effects upon the human body or that impair one's ability to safely perform his or her work,

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

specifically including, but not limited to, prescriptions drugs and over-the-counter medications; alcohol, drugs, and other substances made illegal under federal or state law; "synthetic or designer" drugs: illegal inhalants; "look-alike" drugs; amphetamines, cannabinoids (marijuana and hashish), cocaine, phencyclinidine (PCP), and opiates; and any drugs or other substances references in Schedule I through V of 21 C.F.R. Part 1308 (whether or not such drugs or other substances are narcotics).

81.05.3    **Premises:**  For the purpose of this policy all property, facilities, buildings, structures, installations, work locations, work areas, or vehicles owned, operated, leased, or under the control of Kanawha County Schools.  Private vehicles used for school purposes or parked on school premises or properties are also included under this definition.

81.05.4    **Under the Influence**:  The condition wherein any of the body's sensory, cognitive, or motor functions or capabilities is altered, impaired, diminished, or affected due to substances.  This also means the detectable presence of substances within the body, regardless of when or where they may have been consumed, having an alcohol test result of 0.02 or greater alcohol concentration of blood or breath, and/or having a positive test for other substances.

81.05.5    **Prescription:**  A valid prescription issued to the employee by a licensed health care provider authorized to issue such prescription and used for its intended purpose as prescribed before any expiration date.

81.05.6    **Safety Sensitive" Positions Defined.**  The Kanawha County Board of Education has several positions which are considered safety sensitive. In general, these are positions which involve the care and supervision of students or where a single mistake by such employee can create an immediate threat of serious harm to students, to him or herself or to fellow employees.  Safety sensitive positions shall include, but not be limited to, the following positions:

81.05.6.1 Anyone who operates dangerous machinery.

81.05.6.2 Anyone who operates a county-owned vehicle.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series: G81
Reference:
Issued: 12.13.2007
Revised: 01.07.2008
Revision Number: 1

**81.05.6.3** Anyone whose job duties include administering medication to students.

**81.05.6.4** Anyone who drives his or her own vehicle on school business on a routine or regular basis. Use of an individual's vehicle for commuting to and from school or other workplace shall not be considered school business.

**81.05.6.5** Any other person who volunteers to be subject to this policy.

**81.06 Applicability:** This policy applies to all Kanawha County Schools facilities and property, to all faculty, staff, students, and visitors to school property. All employees are responsible to be familiar with and comply with this policy and companion procedures.

**81.07 Policy Provisions.** It is a violation of the law to manufacture, possess, use, sell, distribute, receive, or transport illicit drugs on to Kanawha County Schools property or at any school sponsored activity. Illegal possession, distribution, or use of drugs or being under the influence of drugs or alcohol by employees, faculty, staff, students, visitors, guests, or other individuals on Kanawha County Schools property or at any school sponsored activity will not be tolerated and may subject violators to discipline, up to and including termination of employment pursuant to the applicable Kanawha County Schools policies and procedures. Any individual engaging in prohibited conduct under this policy is also subject to legal action.

**81.08 Legal Compliance:** The provisions of this policy are subject to any federal, state, or local laws that may prohibit or restrict their applicability, and testing for substances shall be conducted in accordance with and limited by such laws notwithstanding any terms of this policy to the contrary.

**81.09 Pre-Employment Substance Testing:** In the furtherance of achieving the Kanawha County Board of Education's goals and objectives as enumerated above, all applicants who are offered employment by the Kanawha County Board of Education will be required to submit to a urinalysis test for the detection of the illegal use of drugs, as part of the currently required post-offer, pre-employment

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
Series: G81
Reference:
Issued: 12.13.2007
Revised: 01.07.2008
Revision Number: 1

physical. Applicants will be given a copy of this Policy in advance of the post-offer, pre-employment physical.

Applicants will acknowledge having read or had this Policy explained to them and should understand that as a condition of employment they are subject to its contents. Applicants will sign an acknowledgment prior to substance screening, permitting the summary result to be transmitted to the Medical Review Officer (MRO) and the Administrative Assistant of Human Resources. An applicant refusing to complete any part of the drug testing procedure will not be considered a valid candidate for employment with the Kanawha County Board of Education, and such will be considered as a withdrawal of the individual's application for employment. The applicant will not be permitted to reapply for employment with the Kanawha County Board of Education for at least twelve (12) months and not until the applicant shows proof of successful completion of a drug rehabilitation program or proof that the applicant has otherwise rehabilitated successfully and is no longer engaging in illegal drug use.

If substance screening shows a confirmed positive result for which there is no current physician's prescription, a second confirming test will be requested by the MRO. If the first and any requested second confirming test is positive, any job offer will be revoked.

81.10 **Other Substance Tests**: Kanawha County Schools may periodically conduct substance tests based on breath, saliva, urine, blood, and/or hair samples under any of the circumstances noted below. Any employee subjected to any substance test will be required to sign a Substance Test Consent Form. Refusal to sign the form or leaving the work area prior to the substance test without permission of the supervisor, or refusal to cooperate in any way with the testing process, shall be grounds for termination of employment. In the event an employee consents to a substance test but fails to sign a Substance Test Consent Form, his/her failure will not invalidate the consent for the testing.

81.11 **For Cause Testing**. Whenever the Kanawha County Board of Education, through its Administrative Assistant of Human Resources or the person authorized to act in the Administrative Assistant's absence, and/or the MRO, reasonably suspects that an employee's work performance or on-the-job behavior may have been affected in any way

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

by illegal drugs or alcohol or that an employee has otherwise violated the Kanawha County Board of Education Drug-Free Workplace Substance Abuse Policy, the employee will be required to submit a breath and/or urine sample for drug and alcohol testing. When a supervisor observes or is notified of behaviors or events that lead the supervisor to believe that the employee is in violation of the Drug Free Workplace Substance Abuse Policy, the supervisor should notify the Administrative Assistant for of Human Resources.

An employee who is required to submit to drug/alcohol testing based upon reasonable suspicion and refuses will be charged with insubordination, and necessary procedures will be taken to terminate the employee in accordance with Board Policy and state law.

An employee who tests positive on a reasonable suspicion test will be in violation of this Policy. Violation of this Policy may constitute grounds for termination in accordance with Board Policy and state law.

The Kanawha County Schools Administrative Assistant of Human Resources, or the person authorized to act in the Administrative Assistant's absence, or the MRO are the only individuals in the Kanawha County School System authorized to make the determination that reasonable suspicion or cause exists to order a drug screen and are the only individuals in the Kanawha County School System who may order an employee to submit to a drug screen.

There are two types of cases for which reasonable suspicion procedures may be invoked.

1.     Chronic Case, which may be characterized by deteriorating job performance or changes in personal traits characteristics where the use of alcohol or drugs may be reasonably suspected as the cause. These cases may develop over a fairly long period of time.

2.     Acute Case, which means either (i) appearing in a specific incident or observation to then be under the present influence of alcohol and/or drugs; or (ii) after investigation of an accident it appears the use of alcohol or drugs is reasonably suspected to be a contributing cause. Regardless of any previous history, immediate action is

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

necessary.

Circumstances under which substance screening may be considered, in either the chronic or acute cases, include but are not limited to the following:

(1)     Observed use, possession, or sale of illegal drugs and/or use, possession, sale, or abuse of alcohol and/or the illegal use or sale of prescription drugs.

(2)     Apparent physical state of impairment of motor functions.

(3)     Marked changes in personal behavior not attributable to other factors.

(4)     Employee involvement in or contribution to an accident where the use of alcohol or drugs is reasonably suspected or employee involvement in a pattern of repetitive accidents, whether or not they involve actual or potential injury.

(5)     Violations of criminal drug law statutes involving the use of illegal drugs, alcohol, or prescription drugs and/or violations of drug statutes.

The circumstances under which substance screening may be considered, as outlined above, are strictly limited in time and place to employee conduct on duty or during work hours, or on or in Kanawha County Board of Education property, or at school system-approved or school-related functions.

Prior to substance screening, employees will sign an acknowledgment that the summary result will be transmitted to the MRO and the Kanawha County Schools Administrative Assistant for Human Resources.

Drug and/or alcohol screening shall be conducted by Board approved, independent, certified laboratories utilizing recognized techniques and procedures.  A breath analysis test may also be performed by the Kanawha County Sheriff's Department or any local police department

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

equipped to administer such test.

**81.12** <u>**Missing Substances**</u>:   When there is a medication administration/handling discrepancy or where a substance is missing, all staff members who were involved in the handling of, or had access to, the missing substance will be required to submit to a substance test immediately.  Employees who admit to diversion of medications will undergo substance testing.  Refusal to submit to a substance test will be grounds for termination of employment.

**81.13** <u>**Fitness for Duty**</u>:  Employees suspected to be unfit for duty as a result of the use or reasonably suspected use of substances will be subject to substance testing.  Refusal to submit to substance test will be grounds for termination of employment.

**81.14** <u>**Promotion and Transfer Testing**</u>:  When an employee is provisionally offered a position through the Kanawha County Board of Education's selection process for a job that has been identified by the Kanawha County Board of Education as being a safety-sensitive position, the employee will be subject to drug testing in accordance with the procedures contained in this Policy.  Before the employee will be given  final approval for the position, such employee will be given a drug test in accordance with the provisions of this Policy.  An employee who tests positive for illegal drugs on a promotion/transfer test will no longer be considered an applicant for that position. Such employee will also be in violation of this Policy. Violation of this Policy may constitute grounds for termination in accordance with Board Policy and state law.

An employee may withdraw the application for the position at any time up until the employee is scheduled for promotion/transfer testing. Once an employee is scheduled for promotion/transfer testing, if that employee refuses to submit to the test, he/she will be disqualified for consideration for the position and will be considered as being insubordinate and subject to discipline.  Under no circumstances will this employee be considered as a viable candidate for any future openings in this classification until the employee has signed a release for drug testing at the time of submitting the application for the position in connection with a job posting.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
**Employee Drug Use Prevention Policy**
Series: G81
Reference:
Issued: 12.13.2007
Revised: 01.07.2008
Revision Number: 1

**81.15  Return to Duty Testing.** An employee who has been given the opportunity to undergo rehabilitation for drugs will, as a condition of returning to duty, be required to agree to a reasonable follow-up testing established by the Administrative Assistant for Human Resources. The extent and duration of the follow-up testing will depend upon the safety or security nature of the employee's position and the nature and extent of the employee's substance abuse problem.  The Administrative Assistant for Human Resources is to review the conditions of continued employment with the employee prior to the employee's returning to work.  Any such condition for continued employment shall be given to the employee in writing.  The Administrative Assistant for Human Resources may consult with the employee's rehabilitation program in determining an appropriate follow-up testing program, including the frequency of any substance screening contained in a follow-up testing program. In no instance shall such screening be ordered by the Administrative Assistant for of Human Resources more than one (1) time within a seventy-two (72) hour period.

Any employee subject to return to duty testing that has a confirmed positive drug test will be in violation of this Policy. Violation of this Policy will constitute grounds for immediate termination in accordance with Board Policy and state law.

**81.16  Alteration of Sample:**  Specimens reported by the testing laboratory as adulterated or substituted will be considered a refusal to test, and therefore grounds for termination of employment or ineligibility for hire.

**81.17  Workplace Searches:**  With the prior approval of the Superintendent of Schools or his designee, management may conduct searches of school property, including lockers, and, when on school property or while conducting school business, an employee's personal property, including vehicles, in cases where there is reasonable, good faith, objective suspicion of an employee's drug or alcohol usage in violation of this policy.  While no search will be conducted without an employee's consent, consent to a search is a condition of continued employment with the district.  An employee who refuses to cooperate in the conducting of such searches will be subject to disciplinary action up to and including termination of employment.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

81.18 **Collection of Samples**: Testing samples will be collected by a qualified individual only, whether or not such individuals are employees of an outside testing laboratory. Collection of samples will be performed under reasonable and sanitary conditions. The chain of custody of the sample will be recorded, and this record should be retained.

81.19 **Off-Premise Use**: The Kanawha County Board of Education reserves the right to suspend, without pay, any employee who has been arrested for criminal offenses related to the manufacture, possession, sale, use, distribution, dispensation, receipt, or transport of any illegal substance pending resolution of the charges to the Board's satisfaction. Employees who are convicted of any substance related violation under state or federal law or who plead guilty or nolo contendere (i.e., no contest) to such charges must inform the Superintendent in writing within five (5) days of the conviction or plea. **Failure to do so will result in disciplinary action, up to and including termination.** In the event of an employee's conviction or plea to charges relating to the manufacture, possession, sale, use, distribution, dispensation, receipt, or transportation of any substance, the Board will determine whether disciplinary action will be taken, including the appropriateness of continued employment.

81.20 **Confidentiality of Test Results**. All test results will be handled on a confidential basis and will be available only to the Kanawha County Schools personnel who have a need to know such results. The Administrative Assistant, Human Resources or his/her designated representative will determine who will have access to these records.

81.21 **Employee Awareness**. The Office of Human Resources will offer direction, training, and education regarding drug testing available to managers and others.

81.22 **Implementation**. Kanawha County Schools offices and officials with primary responsibility to implement and achieve the goals of this policy include.

81.22.1     Superintendent

81.22.2     Administrative Assistant for Human Resources

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series: G81
Reference:
Issued: 12.13.2007
Revised: 01.07.2008
Revision Number: 1

**81.22.3**     Office of the General Counsel

**81.22.4**     Lead Nurse

**81.22.5**     Director of Counseling and Testing

**81.23 Posting or Advertisement.** Any public announcement, advertisement, or posting soliciting applications for employment in a safety sensitive position in Kanawha County Schools shall include a statement of the requirements of the drug screening program established under this policy for applicants and for employees holding such positions.

**81.24 Rehabilitation.** The Kanawha County Board of Education recognizes that chemical dependency is an illness that may be successfully treated.

**81.24.1**     It is the policy of Kanawha County Schools, where possible, in addition to appropriate personnel action, to refer for rehabilitation an employee with a self-admitted or detected drug or alcohol problem.

**81.24.2**     Employees seeking medical attention for chemical dependency will be entitled to benefits to the extent covered under the West Virginia Public Employee Insurance Agency, if they have chosen to be covered by such insurance.

**81.24.3**     For employees enrolled in a formal treatment/rehabilitation program, Kanawha County Schools may grant sick leave until exhausted and then may grant leave without pay not to exceed one (1) year.

**81.24.4**     The cost of the drug rehabilitation or treatment provider shall be borne by the employee and/or the employee's insurance provider.

**81.24.5**     The Kanawha County Board of Education strongly encourages employees using illegal drugs or alcohol to voluntarily refer themselves to a treatment program. A voluntary referral is defined as being one that occurs prior to any positive test for illegal drugs under this Policy or prior to any other violation of this Policy, including a offense leading to a criminal conviction of that individual on a drug charge. Employees

**KANAWHA COUNTY BOARD OF EDUCATION POLICY**
**Employee Drug Use Prevention Policy**
**Series: G81**
**Reference:**
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision Number: 1**

are not subject to disciplinary action for voluntary referral to rehabilitation, even where rehabilitation is for the use of illegal drugs or alcohol.

81.25 <u>Severability.</u>  The provisions of this policy are considered to be separate and severable.  If any provision of this policy is determined to be invalid or unenforceable, the remaining provisions are to remain in effect.

81.26 <u>Administrative Regulations.</u>  The Superintendent shall adopt administrative regulations, as necessary, to carry out the provisions of this policy.

EXHIBIT 2

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 1 of 12

81.01 **Purpose**. The safety and security of personnel, students, and visitors as well as property of Kanawha County Schools is of vital importance to the Kanawha County Board of Education. The purpose of this policy is to create and maintain a drug and alcohol free work environment by identifying existing employees and potential employees, who use or abuse illicit drugs and/or abuse prescribed medications and/or alcohol.

81.02 **Scope.** This policy is intended to apply to the classes and groups of employees listed herein. This policy is intended to be supplemental to and not in substitution for Board of Education Policy Series G37 which is applicable only to Kanawha County Schools' transportation department.

81.03 **Policy Statement**. The Kanawha County Board of Education is committed to a safe working environment, to making adequate provisions for the safety and health of its employees at their place of employment, and to the safety and health of the students we serve as well as the general public. The Kanawha County Board of Education regards its personnel as individuals as well as employees. Therefore, the Board believes that alcoholism and drug addiction are illnesses and should be treated as such. The Board further believes that employees who develop alcoholism or other drug addictions can be helped to recover and should be offered appropriate assistance. It is in the best interest of the employee and the Board that when alcoholism or drug addiction is present, it should be diagnosed and treated at the earliest possible date. Confidential treatment of the diagnosis and recovery process for alcoholism or drug addiction is essential.

The Kanawha County Board of Education recognizes that substance abuse in our nation and our community exacts staggering costs in both human and economic terms. Substance abuse can be reasonably expected to produce impaired job performance, lost productivity, absenteeism, accidents, wasted materials, lowered morale, rising health care costs, and diminished interpersonal relationship skills. The Kanawha County Board of Education and its employees share a commitment to create and maintain a drug-free workplace.

The Kanawha County Board of Education is responsible for the instruction and well-being of the students entrusted to its care. A consistent message needs to be communicated by the Board that the use

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

of illegal drugs, the abuse of alcohol, and the misuse of prescription drugs are unacceptable.

Provisions of the Federal Anti-Drug Act, 41 U.S.C.A. 0702, require federal grant recipients to establish a drug-free workplace. Employees must be provided with a statement notifying them of the prohibitions pertaining to controlled substances, consequences of violations, and compliance with the drug-free policy as a condition of employment. Employers must inform employees of drug-free requirements through an awareness program.

81.04  **Policy Goals and Objectives.**  It is the intent of the Board of Education, through its policy, procedures, and practices, to reduce the potential for:

81.04.1     The manufacture, possession, use, sale, distribution, dispensation, receipt, or transportation of illegal substances while on school property or while otherwise engaged in school business.

81.04.2     The theft, unauthorized use, or intentional mishandling or misuse of any medication and/or substance that is present on school property for the purpose of providing medication to students.

81.04.3     The consumption of alcoholic beverages on school property.

81.04.4     Being Under the Influence of Substances while on school property or while otherwise engaged in school business or during employment.

81.04.5     Performing duties while Under the Influence of Substances whether on or off Kanawha County Schools property.

81.05  **Definitions.**

81.05.1     **Possession:**  To have on one's person, in one's personal effects, in one's vehicle or otherwise under one's care, custody, or control.

81.05.2     **Substance:**  Any alcohol, drugs, other substances (whether ingested, inhaled, injected subcutaneously, or otherwise) that have known mind altering or function-altering effects upon the human body or that impair one's ability to safely perform his or her work,

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 3 of 12

specifically including, but not limited to, prescriptions drugs and over-the-counter medications; alcohol, drugs, and other substances made illegal under federal or state law; "synthetic or designer" drugs: illegal inhalants; "look-alike" drugs; amphetamines, cannabinoids (marijuana and hashish), cocaine, phencyclinidine (PCP), and opiates; and any drugs or other substances references in Schedule I through V of 21 C.F.R. Part 1308 (whether or not such drugs or other substances are narcotics).

81.05.3   **Premises**:  For the purpose of this policy all property, facilities, buildings, structures, installations, work locations, work areas, or vehicles owned, operated, leased, or under the control of Kanawha County Schools.  Private vehicles used for school purposes or parked on school premises or properties are also included under this definition.

81.05.4   **Under the Influence**:  The condition wherein any of the body's sensory, cognitive, or motor functions or capabilities is altered, impaired, diminished, or affected due to substances.  This also means the detectable presence of substances within the body, regardless of when or where they may have been consumed, having an alcohol test result of 0.02 or greater alcohol concentration of blood or breath, and/or having a positive test for other substances.

81.05.5   **Prescription**:  A valid prescription issued to the employee by a licensed health care provider authorized to issue such prescription and used for its intended purpose as prescribed before any expiration date.

81.05.6   **Safety Sensitive" Positions Defined**.  The Kanawha County Board of Education has several positions which are considered safety sensitive. In general, these are positions which involve the care and supervision of students or where a single mistake by such employee can create an immediate threat of serious harm to students, to him or herself or to fellow employees.  Safety sensitive positions shall include, but not be limited to, the following positions:

81.05.6.1 Superintendent
81.05.6.2 Deputy Superintendent
81.05.6.3 Assistant Superintendent
81.05.6.4 Administrative Assistant
81.05.6.5 Director of Safety

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

81.05.6.6 Director of Maintenance
81.05.6.7 Principal and Assistant Principal.
81.05.6.8 Counselor.
81.05.6.9 Teacher.
81.05.6.10   Coach
81.05.6.11   Aide, including Autism Mentor, Braille and Sign Language
          Specialist and Paraprofessional.
81.05.6.12   Bus Operator.
81.05.6.13   Cabinetmaker.
81.05.6.14   Carpenter.
81.05.6.15   Chief Mechanic.
81.05.6.16   Child Care Worker i.e., day-care, third base or on-deck worker
81.05.6.17   Cook and Cafeteria Manager.
81.05.6.18   Crew Leader.
81.05.6.19   Custodian.
81.05.6.20   Electrician.
81.05.6.21   Electronic Technician.
81.05.6.22   Foreman.
81.05.6.23   General Maintenance.
81.05.6.24   Glazier.
81.05.6.25   Groundsman.
81.05.6.26   Handyman.
81.05.6.27   Heating and Air Conditioning Mechanic.
81.05.6.28   Heavy Equipment Operator.
81.05.6.29   Locksmith.
81.05.6.30   Lubrication Man.
81.05.6.31   Machinist.
81.05.6.32   Mason.
81.05.6.33   Mechanic and Mechanic Assistant.
81.05.6.34   Painter.
81.05.6.35   Plumber.
81.05.6.36   Printing Operator and Supervisor.
81.05.6.37   Roofing/Sheeting Metal mechanic.
81.05.6.38   School Bus Supervisor.
81.05.6.39   Supervisor of Maintenance.
81.05.6.40   Supervisor of Transportation.
81.05.6.41   Truck Driver.
81.05.6.42   Warehouse Clerk.
81.05.6.43   Welder.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 5 of 12

**81.05.6.44**   Anyone who operates a county-owned vehicle.

**81.05.6.45**   Anyone whose job duties include administering medication to students.

**81.05.6.46**   Anyone who drives his or her own vehicle on school business more than an average of 10 miles per week.

**81.05.6.47**   Any other person who volunteers to be subject to this policy.

**81.06**  **Applicability**: This policy applies to all Kanawha County Schools' facilities and property, to all faculty, staff, students, and visitors to school property. All employees are responsible to be familiar with and comply with this policy and companion procedures.

**81.07**  **Policy Provisions**. It is a violation of the law to manufacture, possess, use, sell, distribute, receive, or transport illicit drugs on to Kanawha County Schools' property or at any school sponsored activity. Illegal possession, distribution, or use of drugs or being under the influence of drugs or alcohol by employees, faculty, staff, students, visitors, guests, or other individuals on Kanawha County Schools property or at any school sponsored activity will not be tolerated and may subject violators to discipline, up to and including termination of employment pursuant to the applicable Kanawha County Schools policies and procedures. Any individual engaging in prohibited conduct under this policy is also subject to legal action.

**81.08**  **Legal Compliance**: The provisions of this policy are subject to any federal, state, or local laws that may prohibit or restrict their applicability, and testing for substances shall be conducted in accordance with and limited by such laws notwithstanding any terms of this policy to the contrary.

**81.09**  **Pre-Employment Substance Testing**: In the furtherance of achieving the Kanawha County Board of Education's goals and objectives as enumerated above, all applicants who are offered employment by the Kanawha County Board of Education will be required to submit to a urinalysis test for the detection of the illegal use of drugs, as part of the currently required post-offer, pre-employment physical. Applicants will be given a copy of this Policy in advance of the post-offer, pre-employment physical.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 6 of 12

Applicants will acknowledge having read or had this Policy explained to them and should understand that as a condition of employment they are subject to its contents. Applicants will sign an acknowledgment prior to substance screening, permitting the summary result to be transmitted to the Medical Review Officer (MRO) and the Administrative Assistant of Human Resources. An applicant refusing to complete any part of the drug testing procedure will not be considered a valid candidate for employment with the Kanawha County Board of Education, and such will be considered as a withdrawal of the individual's application for employment. The applicant will not be permitted to reapply for employment with the Kanawha County Board of Education for at least twelve (12) months and not until the applicant shows proof of successful completion of a drug rehabilitation program or proof that the applicant has otherwise rehabilitated successfully and is no longer engaging in illegal drug use.

If substance screening shows a confirmed positive result for which there is no current physician's prescription, a second confirming test from the original sample will be requested by the MRO. If the first and any requested second confirming test is positive, any job offer will be revoked.

81.10 **Other Substance Tests**: Kanawha County Schools may periodically conduct substance tests based on breath, saliva, urine, blood, and/or hair samples under any of the circumstances noted below. Any employee subjected to any substance test will be required to sign a Substance Test Consent Form. Refusal to sign the form or leaving the work area prior to the substance test without permission of the supervisor, or refusal to cooperate in any way with the testing process, shall be grounds for termination of employment. In the event an employee consents to a substance test but fails to sign a Substance Test Consent Form, his/her failure will not invalidate the consent for the testing.

81.11 **For Cause Testing**. Whenever the Kanawha County Board of Education, through its Administrative Assistant of Human Resources or the person authorized to act in the Administrative Assistant's absence, and/or the MRO, reasonably suspects that an employee's work performance or on-the-job behavior may have been affected in any way by illegal drugs or alcohol or that an employee has otherwise violated

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 7 of 12

the Kanawha County Board of Education Drug-Free Workplace Substance Abuse Policy, the employee will be required to submit a breath and/or urine sample for drug and alcohol testing. When a supervisor observes or is notified of behaviors or events that lead the supervisor to believe that the employee is in violation of the Drug Free Workplace Substance Abuse Policy, the supervisor should notify the Administrative Assistant for of Human Resources.

An employee who is required to submit to drug/alcohol testing based upon reasonable suspicion and refuses will be charged with insubordination, and necessary procedures will be taken to terminate the employee in accordance with Board Policy and state law.

An employee who tests positive on a reasonable suspicion test will be in violation of this Policy. Violation of this Policy may constitute grounds for termination in accordance with Board Policy and state law.

The Kanawha County Schools Administrative Assistant of Human Resources, or the person authorized to act in the Administrative Assistant's absence, or the MRO are the only individuals in the Kanawha County School System authorized to make the determination that reasonable suspicion or cause exists to order a drug screen and are the only individuals in the Kanawha County School System who may order an employee to submit to a drug screen.

There are two types of cases for which reasonable suspicion procedures may be invoked.

1. Chronic Case, which may be characterized by deteriorating job performance or changes in personal traits characteristics where the use of alcohol or drugs may be reasonably suspected as the cause. These cases may develop over a fairly long period of time.

2. Acute Case, which means either (i) appearing in a specific incident or observation to then be under the present influence of alcohol and/or drugs; or (ii) after investigation of an accident it appears the use of alcohol or drugs is reasonably suspected to be a contributing cause. Regardless of any previous history, immediate action is necessary.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 8 of 12

Circumstances under which substance screening may be considered, in either the chronic or acute cases, include but are not limited to the following:

(1)     Observed use, possession, or sale of illegal drugs and/or use, possession, sale, or abuse of alcohol and/or the illegal use or sale of prescription drugs.

(2)     Apparent physical state of impairment of motor functions.

(3)     Marked changes in personal behavior not attributable to other factors.

(4)     Employee involvement in or contribution to an accident where the use of alcohol or drugs is reasonably suspected or employee involvement in a pattern of repetitive accidents, whether or not they involve actual or potential injury.

(5)     Violations of criminal drug law statutes involving the use of illegal drugs, alcohol, or prescription drugs and/or violations of drug statutes.

The circumstances under which substance screening may be considered, as outlined above, are strictly limited in time and place to employee conduct on duty or during work hours, or on or in Kanawha County Board of Education property, or at school system-approved or school-related functions.

Prior to substance screening, employees will sign an acknowledgment that the summary result will be transmitted to the MRO and the Kanawha County Schools Administrative Assistant for Human Resources.

Drug and/or alcohol screening shall be conducted by Board approved, independent, certified laboratories utilizing recognized techniques and procedures.  A breath analysis test may also be performed by the Kanawha County Sheriff's Department or any local police department equipped to administer such test.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 9 of 12

81.12 **Post-Accident Testing**: If Kanawha County Schools has reasonable
cause to believe an employee has caused an on-the-job injury that is
considered recordable under OSHA guidelines (i.e., requiring medical
treatment) as a result of being Under the Influence, the supervisor may
require the injured employee to undergo a post-accident substance test.
Refusal to submit to the substance test shall be grounds for termination
of employment.

81.13 **Missing Substances**:  When there is a medication
administration/handling discrepancy or where a substance is missing,
all staff members who were involved in the handling of, or had access to,
the missing substance will be required to submit to a substance test
immediately.  Employees who admit to diversion of medications will
undergo substance testing.  Refusal to submit to a substance test will be
grounds for termination of employment.

81.14 **Fitness for Duty**: Employees suspected to be unfit for duty as a
result of the use or reasonably suspected use of substances will be
subject to substance testing.  Refusal to submit to substance test will be
grounds for termination of employment.

81.15 **Random Selection Testing**:  All individuals who are employed in
Safety Sensitive Positions are subject to random testing for substances.
Where random testing is prohibited or restricted by applicable federal,
state or local statute or regulation, Kanawha County Schools will
conform to all applicable laws and regulations notwithstanding the
provisions of this policy.

81.16 **Return to Duty Testing.** An employee who has been given the
opportunity to undergo rehabilitation for drugs will, as a condition of
returning to duty, be required to agree to a reasonable follow-up testing
established by the Administrative Assistant for Human Resources. The
extent and duration of the follow-up testing will depend upon the safety
or security nature of the employee's position and the nature and extent
of the employee's substance abuse problem.  The Administrative
Assistant for Human Resources is to review the conditions of continued
employment with the employee prior to the employee's returning to
work.  Any such condition for continued employment shall be given to
the employee in writing.  The Administrative Assistant for Human

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 10 of 12

Resources may consult with the employee's rehabilitation program in determining an appropriate follow-up testing program, including the frequency of any substance screening contained in a follow-up testing program. In no instance shall such screening be ordered by the Administrative Assistant for of Human Resources more than one (1) time within a seventy-two (72) hour period.

Any employee subject to return to duty testing that has a confirmed positive drug test will be in violation of this Policy. Violation of this Policy will constitute grounds for immediate termination in accordance with Board Policy and state law.

81.17 **Alteration of Sample**: Specimens reported by the testing laboratory as adulterated or substituted will be considered a refusal to test, and therefore grounds for termination of employment or ineligibility for hire.

81.18 **Workplace Searches**: With the prior approval of the Superintendent of Schools or his designee, management may conduct searches of school property, including lockers, and, when on school property or while conducting school business, an employee's personal property, including vehicles, in cases where there is reasonable, good faith, objective suspicion of an employee's drug or alcohol usage in violation of this policy. While no search will be conducted without an employee's consent, consent to a search is a condition of continued employment with the district. An employee who refuses to cooperate in the conducting of such searches will be subject to disciplinary action up to and including termination of employment.

81.19 **Collection of Samples**: Testing samples will be collected by a qualified individual only, whether or not such individuals are employees of an outside testing laboratory. Collection of samples will be performed under reasonable and sanitary conditions. The chain of custody of the sample will be recorded, and this record should be retained.

81.20 **Off-Premise Use**: The Kanawha County Board of Education reserves the right to suspend, without pay, any employee who has been arrested for criminal offenses related to the manufacture, possession, sale, use, distribution, dispensation, receipt, or transport of any illegal substance pending resolution of the charges to the Board's satisfaction. Employees who are convicted of any substance related violation under state or

KANAWHA COUNTY BOARD OF EDUCATION POLICY
**Employee Drug Use Prevention Policy**
Series G81
Reference
**Issued: 12.13.2007**
**Revised: 01.07.2008**
**Revision: 1**

Enclosure 9
October 15, 2008
Page 11 of 12

federal law or who plead guilty or nolo contendere (i.e., no contest) to
such charges must inform the Superintendent in writing within five (5)
days of the conviction or plea. **Failure to do so will result in
disciplinary action, up to and including termination.** In the event
of an employee's conviction or plea to charges relating to the
manufacture, possession, sale, use, distribution, dispensation, receipt, or
transportation of any substance, the Board will determine whether
disciplinary action will be taken, including the appropriateness of
continued employment.

81.21 **Confidentiality of Test Results.** All test results will be handled on
a confidential basis and will be available only to the Kanawha County
Schools personnel who have a need to know such results. The
Administrative Assistant, Human Resources or his/her designated
representative will determine who will have access to these records.

81.22 **Employee Awareness.** The Office of Human Resources will offer
direction, training, and education regarding drug testing available to
managers and others.

81.23 **Implementation.** Kanawha County Schools' offices and officials with
primary responsibility to implement and achieve the goals of this policy
include.

81.23.1   Superintendent

81.23.2   Administrative Assistant for Human Resources

81.23.3   Office of the General Counsel

81.23.4   Lead Nurse

81.23.5   Director of Counseling and Testing

81.24 **Posting or Advertisement.** Any public announcement,
advertisement, or posting soliciting applications for employment in a
safety sensitive position in Kanawha County Schools shall include a
statement of the requirements of the drug screening program
established under this policy for applicants and for employees holding
such positions.

KANAWHA COUNTY BOARD OF EDUCATION POLICY
Employee Drug Use Prevention Policy
Series G81
Reference
Issued: 12.13.2007
Revised: 01.07.2008
Revision: 1

Enclosure 9
October 15, 2008
Page 12 of 12

81.25   **Rehabilitation.** The Kanawha County Board of Education recognizes that chemical dependency is an illness that may be successfully treated.

81.25.1      It is the policy of Kanawha County Schools, where possible, in addition to appropriate personnel action, to refer for rehabilitation an employee with a self-admitted or detected drug or alcohol problem.

81.25.2      Employees seeking medical attention for chemical dependency will be entitled to benefits to the extent covered under the West Virginia Public Employee Insurance Agency, if they have chosen to be covered by such insurance.

81.25.3      For employees enrolled in a formal treatment/rehabilitation program, Kanawha County Schools may grant sick leave until exhausted and then may grant leave without pay not to exceed one (1) year.

81.25.4      The cost of the drug rehabilitation or treatment provider shall be borne by the employee and/or the employee's insurance provider.

81.25.5      The Kanawha County Board of Education strongly encourages employees using illegal drugs or alcohol to voluntarily refer themselves to a treatment program. A voluntary referral is defined as being one that occurs prior to any positive test for illegal drugs under this Policy or prior to any other violation of this Policy, including a offense leading to a criminal conviction of that individual on a drug charge. Employees are not subject to disciplinary action for voluntary referral to rehabilitation, even where rehabilitation is for the use of illegal drugs or alcohol.

81.26   **Severability.** The provisions of this policy are considered to be separate and severable.  If any provision of this policy is determined to be invalid or unenforceable, the remaining provisions are to remain in effect.

81.27   **Administrative Regulations.** The Superintendent shall adopt administrative regulations, as necessary, to carry out the provisions of this policy.

# EXHIBIT 3

1



**K A N A W H A   C O U N T Y   S C H O O L S**

200 Elizabeth Street, Charleston, West Virginia 25311-2119
http://kcs.kana.k12.wv.us

(304) 348-7732 Fax (304) 348-7735
Ronald Duerring, Ed.D. Superintendent

## Kanawha County Schools
## Random Drug Testing Plan
Submitted by Carol Hamric
Administrative Assistant Human Resources

**Policy Statement**:

The Kanawha County Board of Education has adopted a random drug and alcohol-testing program for all safety sensitive personnel defined in Employee Drug Use Prevention Policy G81. The policy requires random testing for employees in sensitive positions, subject to board criteria. As specified in Section 81.15 of this policy, the Board has determined that these sensitive positions are testing designated positions subject to random testing. The position titles designated for random drug testing are listed in Section 81.05.6, along with the criteria and procedures applied in designating such positions for drug testing, including the justification for such criteria and procedures.

These positions are characterized by critical safety or security responsibilities as related to the mission of Kanawha County schools. The job functions associated with these positions directly and immediately relate to public health and safety, the protection of life and property security. These positions are identified for random testing because they require the highest degree of trust and confidence.

**Program Objectives**:

• To maintain the highest safety, health, and work performance standards possible, and to reduce work-related accidents, injuries, and damage which may be caused by drug and alcohol use.

• To offer direct assistance to employees who are struggling with drug and alcohol issues.

**Effective Date:**

• Random drug testing will be effective January 1, 2009.

• Prospective and existing employees shall receive a copy of this plan and sign that they understand the Employee Drug Use Prevention Policy. A copy of the Random Drug Testing Plan is on file in the Human Resources Office and is available upon request.

**Test Administration:**

• Health Research Systems/EMSI will be the full-service provider of Kanawha County Schools random drug testing Program. Health Research Systems/EMSI staff will collect specimens from employees at the worksite and the testing of samples will occur at a SAMHSA (USDHHR: Substance Abuse and Mental Health Services Administration) certified laboratory. The results will be transmitted from the lab to a certified MRO (Medical Review Officer) who will provide final result determination.

• The method to determine the presence or absence of drugs will be urinalysis and presence or absence of alcohol will be breath analysis.

• Health Research Systems/EMSI uses only "Substance Abuse and Mental Health Services Administration" (SAMHSA) approved laboratories. These are the only laboratories approved to do federal employee workplace drug testing.

• The drug test panels are for amphetamines, methadone, phencyclidine, cocaine, opiates, marijuana (THC), barbiturates, and benzodiazepines.

• To ensure privacy and dignity of employees, random collections will not be "observed" unless collector has reason to believe the donor has or will attempt to substitute or adulterate a sample. Standard collection procedures will be used to ensure the integrity of the test.

• All reasonable steps will be taken to assure the dignity of the employee and confidentiality of information.

• Identification: A unique sample identification number is assigned to each donor and that number will label the sample throughout the process.

• Labeling: The lab has an established protocol from sealing to storage. When the sample is donated, the technician peels off the label, seals the sample, places the sample in a bag, and signs off.

• Chain of Custody: The collection and testing process provides identity and integrity of the sample from collection to disposal.

• The minimum split sample amount is 45 ml.

• The lab utilizes Mass Spectrometry and Gas Chromatography (MS/GC) to verify a positive screen. MS/GC is the gold standard of testing.

**Selection Process**

In implementing the program of random testing the Administrative Assistant of Human Resources will:

Evaluate periodically whether the numbers of employees tested and the frequency with which those tests will be administered satisfy Kanawha County Schools duty to achieve a drug-free work force and

Monitor the number of sensitive employees occupying testing designated positions and the frequency with which random tests will be conducted. The percent of random testing is below:

25% pool testing frequency using a random algorithm
832 employees / 9 months = 92 tests per month / 20 days = 5 tests a day

**Cost**

| | |
|---|---|
| Percent of random testing | 25% |
| 3,326 safety sensitive employees | 832 |
| | $36,608 |
| Annual cost @ $44 per test | |

**Notification of Selection**

An employee selected for random testing, and the individual's first-line supervisor, shall be notified the same day the test is scheduled. The supervisor shall explain to the employee that the employee is under no suspicion of taking drugs and that the employee's name was selected randomly.

**Notification by MRO:**

• The MRO will inform Human Resources of all negative tests within 48 hours of report time from the laboratory.

• Positive test results will be communicated to Human Resources as soon as confirmation results are available from the MRO.

**Positive Test Results:**

•   Where possible, in addition to appropriate personal action, an employee will be referred to rehabilitation with a self-admitted or detected drug or alcohol problem.

**Records:**

• Human Resources will maintain the records of all test results.

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                          Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### NOTICE OF HEARING

To:     Kanawha County Schools        Ronald Duerring, Ed.D., Superintendent
        c/o Ronald Duerring, Ed.D.,       Kanawha County Schools
          Superintendent                200 Elizabeth Street
        200 Elizabeth Street            Charleston, WV 25311
        Charleston, WV 25311

        Kanawha County Board of Education     James Withrow, Esquire
        c/o Ronald Duerring, Ed.D.,       Kanawha County Board of Education
          Superintendent                200 Elizabeth Street
        200 Elizabeth Street            Charleston, WV 25311
        Charleston, WV 25311

Please take **NOTICE** that, Petitioners in the above-styled proceeding will bring on for

hearing their request for injunctive relief previously filed with their Verified Petition for Writ of

Mandamus, Declaratory Judgment and Injunctive Relief, before the Honorable Herman G.

Canady, Jr., Judge, Kanawha County Circuit Court, Kanawha County Judicial Annex, 111 Court

Street, Charleston, West Virginia, on the *10th day of December, 2008, at 1:30 p.m.*

American Federation of Teachers West<br>Virginia, AFL-CIO, et al.<br>By counsel

Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

Jeffrey G. Blaydes (SBID #6473)
Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV  25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
*Counsel for Petitioners*

2

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

      Petitioners,

v.               Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

      Respondents.

### CERTIFICATE OF SERVICE

  I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing

NOTICE OF HEARING, *via* facsimile and United States mail on this 1st day of December, 2008,

upon the following:

> Kanawha County Board of Education
> c/o Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV  25311
> (*via* facsimile & regular mail)
>
> Kanawha County Schools
> Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV  25311
> (*via* facsimile & regular mail)
>
> Ronald Duerring, Ed.D., Superintendent
> Kanawha County Schools
> 200 Elizabeth Street
> Charleston, WV  25311
> (*via* facsimile & regular mail)

James Withrow, Esquire
Kanawha County Board of Education
200 Elizabeth Street
Charleston, WV 25311
(*via* facsimile & regular mail)

Jeffrey G. Blaydes

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                     Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### MOTION FOR A PRELIMINARY INJUNCTION

By counsel and pursuant to W.V.R.C.P. 65, Petitioners, American Federation of Teachers -

West Virginia, AFL-CIO, Judy Hale, Frederick Albert, Cynthia Phillips and Gregory Dodd, move

for a preliminary injunction enjoining Respondents from enforcing the "Employee Drug Use

Prevention Policy" and from conducting testing of individuals' bodily fluid without particularized

suspicion or probable cause.

American Federation of Teachers West
Virginia, AFL-CIO, et al.
  By counsel

_____
Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

_____
Jeffrey G. Blaydes (SBID #6473)
Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV  25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
*Counsel for Petitioners*

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                          Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing MOTION

FOR PRELIMINARY INJUNCTION AND WAIVER OF BOND, by placing a true copy, postage

prepaid, in the United States mail, on this 5th day of December, 2008, upon the following:

> Kanawha County Board of Education
> c/o Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV 25311
>
> Kanawha County Schools
> Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV 25311
>
> Ronald Duerring, Ed.D., Superintendent
> Kanawha County Schools
> 200 Elizabeth Street
> Charleston, WV 25311

James Withrow, Esquire
Kanawha County Board of Education
200 Elizabeth Street
Charleston, WV  25311


Jeffrey G. Blaydes

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

                Petitioners,

v.                                Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

                Respondents.

### MEMORANDUM OF LAW
### IN SUPPORT OF PETITIONERS'
### MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

Come now Petitioners, American Federation of Teachers - West Virginia, AFL-CIO ("AFT"),

Judy Hale, Frederick Albert, Cynthia Phillips and Gregory Dodd, by counsel, and file their

Memorandum of Law in Support of Petitioners' Motion for a Preliminary Injunction.

Petitioners request that this Court grant a preliminary injunction and enjoin Respondents

from enforcing the "Employee Drug Use Prevention Policy" and from conducting random testing

of individuals' bodily fluids in violation of their constitutional rights.

I.    IN DECIDING WHETHER TO GRANT PETITIONERS' MOTION FOR A PRELIMINARY INJUNCTION, THE COURT SHOULD BALANCE THE IRREPARABLE INJURY PETITIONERS WILL SUFFER IF THE MOTION IS DENIED AGAINST ANY HARM RESPONDENTS WILL ENDURE IF IT IS GRANTED, WHILE TAKING INTO ACCOUNT THE SUBSTANTIALITY OF PETITIONERS' CLAIM ON THE MERITS AND THE PUBLIC INTEREST.

In *Jefferson County Board of Education v. Jefferson County Education Association*, 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990), our Supreme Court "recognized the necessity of a balancing of hardship test" to determine whether to issue a preliminary injunction.  That test was set forth in Syllabus Point 4 of *State ex rel. Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932): "The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ."  The *Jefferson County* Court elaborated that this approach was "similar" to that which "has evolved in the federal courts," 183 W. Va. at 24, 393 S.E.2d at 662, and which provides:

> Under the balance of hardship test the [trial] court must consider, in "flexible interplay," the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to  the  plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest."

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985), *citing Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977); *accord, State ex rel. McGraw v. Imperial Marketing*, 196 W. Va. 346, 352 n.8, 472 S.E.2d 792, 798 n.8 (1996).

The first step is to balance the likelihood of irreparable harm to Petitioners against the likelihood of harm to Respondents, and if a decided imbalance of hardship should appear in

2

Petitioners' favor, the likelihood-of-success standard is replaced by one that considers whether the Petitioners have raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. *Blackwelder*, 550 F.2d at 195, *quoting Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740, 743 (2nd Cir. 1953).[1]  As Petitioners will demonstrate, each of the factors in this case weigh heavily toward granting the motion for a preliminary injunction.

II.      PETITIONERS ARE ENTITLED TO A PRELIMINARY INJUNCTION.

A.      The Irreparable Injury That Petitioners Will Suffer upon Denial of Their Motion Is Severe While Respondents Will in No Way Be Harmed If the Motion Is Granted.

As more fully demonstrated below in Petitioners' discussion of the merits, at stake for Petitioners in this motion are their fundamental rights to be free from unlawful searches and seizures under the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution.  Additionally, Petitioners' constitutional right of privacy will be violated.

The West Virginia Supreme Court of Appeals has previously held and recently affirmed that conducting random drug testing of job positions that are not safety sensitive is a violation of such individual's' privacy rights and right to be free from unlawful searches and seizures. *Baughman v. Wal-Mart Stores*, 215 W.Va. 45, 592 S.E.2d 824 (2003); *Twigg v. Hercules Corporation*, 185 W.Va.

---

[1]According to the Fourth Circuit,

The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree.  If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success.  Always, of course, the public interest should be considered.

*Feller v. Brock*, 802 F.2d 722, 727 (4th Cir. 1986), *quoting Blackwelder*, 550 F.2d at 196.

155, 406 S.E.2d 52 (1990).

A failure to issue an injunction will put those rights of the Petitioners in jeopardy.   Each random drug screen will result in an unlawful search and seizure of the individual being tested. Without an injunction, individuals will be required to urinate in a cup, possibly with another individual observing the sample being taken.  Of course, once the sample has been given, there is no way to remedy the harm.  That is, once the sample is given, the unlawful search and the violation of the right to privacy cannot be undone.  In addition, urinalysis can disclose confidential information about the tested individual beyond illegal drug usage.

In contrast to the constitutionally weighty interests that Petitioners have at stake in their motion, the threat of harm to Respondents if the motion is granted is, at most, *de minimis*.  If the *status quo* is maintained, Respondents will still have a thorough and exhaustive drug testing policy. The old Policy[2] authorizes drug testing in <u>six</u> different instances: (1) pre-employment testing; (2) "for cause" or reasonable suspicion testing; (3) missing substance" testing; (4) "fitness for duty" testing; (5) promotion and transfer testing; and (6) return to duty testing.  The policy has been in place since December 13, 2007, and could continue unabated if the motion is granted.  Petitioners do not have any objection to the old Policy's drug testing requirements.

Respondents have not previously found it necessary to impose a random drug screening policy and have operated safely for some time without authority for random drug screening.  This, in and of itself, demonstrates that Respondents will suffer no harm if the motion is granted.  The old Policy will continue to protect Respondents' interests, as well as those of its students and teachers. Thus, Respondents can point to no identifiable harm that will befall them if this Court grants the

---

[2]The old Policy accompanies the Petition in this case as Exhibit 1.

4

preliminary injunction.

On the other hand, granting the injunction would serve the interests of the public. The public interest would be served by the granting of this motion because its interest in protecting constitutional rights to privacy and the right to be free from unconstitutional searches will be upheld.

Because Petitioners bear such an imbalance of the hardships in this case, the inquiry on the merits need only be to determine whether the "petitioner[s] ha[ve] raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder*, 550 F.2d at 195, *quoting Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740, 743 (2nd Cir. 1953).   As Part II-B now shows, the Petitioners' case on the merits more than suffices to meet that standard.   Indeed, by virtue of controlling West Virginia Supreme Court of Appeals' precedent, the Petitioners can demonstrate a substantial likelihood of success on the merits.

      B.    <u>Petitioners Are Likely to Succeed on the Merits</u>.

          1.    **Mandatory, Random Drug Testing of Employees, Unless Justified by Overriding Safety Concerns, Invades Employees' Privacy, Violates the Public Policy of West Virginia, and Is Unlawful.**

In *Twigg v. Hercules Corporation*, 185 W.Va. 155, 158, 406 S.E.2d 52, 55 (1990), our State Supreme Court held that "it is contrary to public policy in West Virginia for an employer to require an employee to submit to drug testing, since such testing portends an invasion of an individual's right to privacy." Urinalysis drug testing of employees, said the Court, could be administered in only two circumstances: "where it is conducted by an employer based upon reasonable good faith objective suspicion of an employee's drug usage or where an employee's job responsibility involves public safety or the safety of others." *Id.* More recently, the Court has also permitted employers to

5

drug test in the pre-employment or hiring context, when the applicant has a lowered expectation of privacy because of common employer inquiries like background checks and medical testing. *Baughman v. Wal-Mart Stores, Inc.*, 215 W.Va. 45, 48-49, 592 S.E.2d 824, 827-28 (2003). The drug test there was simply part of the pre-employment physical examination. In reaching its conclusion, however, the Court emphatically recommitted to *Twigg*: "we strongly affirm our holding in *Twigg* regarding the appropriate balance that must be struck between privacy rights and employer's interests for an employer's current employees." 215 W.Va. at 49. The decision also cautioned that "[c]ourts must guard against the inadvertent self-fulfilling 'shrinking' of 'expectations of privacy[.]'" *Id.*

Petitioners do not question the Board's authority – indeed its obligation – to test an employee who is the object of an individualized suspicion of drug usage or impairment. Nor do they question the exception for testing personnel in safety-sensitive personnel. Rather, what they challenge is the breathtakingly sweeping definition that the Board's new Policy adopts for employees who work in such jobs. Paragraph 81.05.6 of that Policy[3] includes within "safety sensitive positions" each and every administrator, counselor, teacher, coach, aide, cook, locksmith, painter, warehouse clerk and others whose jobs clearly do not "involve[] public safety of the safety of others." *Id.* The list is a blatant attempt to simply ignore the Supreme Court's rulings in *Twigg* and *Baughman*.

That such overbroad and generalized groupings of employees for drug testing violates public policy is evident from the facts in *Twigg*. The employer in that case manufactured "highly explosive and dangerous" rocket fuels. 185 W.Va. at 159. Obviously, Hercules had jobs that entailed serious safety concerns. Nevertheless, the Court concluded that there had to be an individualized

---

[3]The New Policy accompanies the Petition in this case as Exhibit 2. Paragraph 81.05.6 is quoted in its entirety in Paragraph 17 of the Petition.

determination about whether Mr. Twigg's responsibilities involved public safety or the safety of others. 185 W.Va. at 159. (Mr. Twigg worked to maintain inventory at the plant. *Id.* at 156.) In addition, the Court in *Baughman* made clear that "the employee's right of privacy is not outweighed by the employer's rights and interests unless *specific* heightened safety concerns" are proved. 215 W.Va. at 48 (emphasis added).

The safety responsibilities referred to by the Court in *Twigg* and *Baughman* clearly related to jobs in which employees performed dangerous work. One simply cannot compare a teacher who instructs a room of 25 students and who occasionally uses a blackboard to a person who mixes rocket fuel or to one who operates a train's locomotive. *See Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989). The Board's argument that teachers could be thrust into emergency situations and might have to be responsible to make decisions that could affect children's safety is worse than the tail wagging the dog; it is the tail wagging the elephant. The probability that a teacher would confront an emergency is remote, and for it to occur at a time when that teacher is drug-impaired so as to affect performance[4] – and has gone undetected despite the administration's ability to test upon reasonable suspicion – is so minuscule that it cannot possibly outweigh the

---

[4] A recent and comprehensive study on substance abuse in the workplace found the following:

Those working in education, training, and library occupations (4.1 percent), community and social services occupations (4.0 percent), and protective services 3.4 percent) had the lowest prevalence of past month illicit drug use among the major occupational groups.

SHARON LARSON, JOE EYERMAN, MISTY FOSTER & JOSEPH GFROERER, WORKER SUBSTANCE USE AND WORKPLACE POLICIES AND PROGRAMS 22 (2007 D.H.H.S.). The study also showed education, training, and library to be second lowest in the incidence of heavy alcohol use among major occupations. *Id.* at 24. In addition, "educational services" was second lowest among industry categories in illicit drug use and was the lowest in heavy alcohol use. *Id.* at 25.

7

privacy rights of hundreds of Kanawha County school employees.[5]

**2.   Defendants' Policy Violates the Fourth Amendment to the United States Constitution and Article III, § 6 of the West Virginia Constitution.**

The Fourth Amendment to the United States Constitution guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches shall not be violated[.]" Article III, § 6 of the West Virginia Constitution has virtually identical language, changing only the word, "people," to "citizens". Generally speaking, our Court has followed federal precedent in interpreting § 6, *e.g., State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973), although the Court has also often remarked and held that our Bill of Rights affords greater protection for individual rights than does the federal constitution. *E.g., Women's Health Center v. Panepinto*, 191 W.Va. 436, 442, 446 S.E.2d 658, 664 (1993); *Woodruff v. Board of Trustees*, 173 W.Va. 604, 611, 319 S.E.2d 372, 379 (1984); *Pushinsky v. Board of Law Examiners*, 164 W.Va. 736, 745, 266 S.E.2d 444, 449 (1980). In *Baughman* the Court expressly noted that its ruling there – authorizing pre-employment drug testing – "relate[d] only to the case of a private employer; and nothing in this

---

[5]One court, and only one, has found the "emergency"/*in loco parentis* rationale sufficient to warrant drug testing of school employees at the time of their hiring, transfer, or promotion. *Knox County Education Association v. Knox County Board of Education*, 158 F.3d 361 (6th Cir. 1998). The Kanawha County Board already has testing in such circumstances in its Policy, and the Petitioners do not challenge that in this case. (They also do not concede the constitutionality of all pre-employment testing.) As noted in the *Knox County* case, as well as in *Twigg* and *Baughman*, the validity of drug testing is a balancing between employees' privacy rights and the employers' interests, and the employees' expectation of privacy is less in those contexts. In doing that balance, the *Knox County* Court emphasized that it did not have before it a program that involved ongoing, random drug testing. 158 F.3d at 380 & 384 ("[T]he drug testing regime adopted by Knox County is circumscribed, narrowly-tailored, and not overly intrusive . . .. This is particularly so because it is a one-time test, with advance notice and with no random testing component[.]"). In contrast to *Knox County*, other courts have struck down sweeping pre-employment testing. *United Teachers of New Orleans v. Orleans Parish School Board*, 142 F.3d 853 (5th Cir. 1998); *Robinson v. City of Seattle*, 10 P.3d 452, 470 (Wash. App. 2000).

8

opinion is to be seen as indicative of the scope of the legal rights of or restraints upon a public employer, the conduct of which directly implicates, *inter alia*, the constitutional prohibitions against searches without probable cause." The case law relating to the constitutional scope of drug testing, however, has been overwhelmingly federal, and there are no West Virginia cases applying Article III, § 6 to public employer drug testing.

The analysis in unlawful search law begins with whether there has been or will be a "search" within the meaning of the Bills of Rights.  In this case, that question has been unequivocally answered: state-ordered "collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable." *Skinner, supra*, 489 U.S. at 617; *accord, e.g., Chandler v. Miller*, 520 U.S. 305, 313 (1997).  The next question then becomes whether the search is "reasonable," because the relevant state and federal amendments prohibit only "unreasonable" searches.  "To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler*, 520 U.S. at 313.  In the criminal context, reasonableness generally requires a warrant issued by a neutral magistrate and based upon probable cause.  Sometimes circumstances might justify a lower threshold than probable cause, such as reasonable suspicion.  *E.g., Terry v. Ohio*, 392 U.S. 1 (1968).  Moreover, "particularized circumstances to the main rule [of individualized suspicion] are sometimes warranted based on 'special needs, beyond the normal need for law enforcement.'" *Chandler*, 520 U.S. at 313, *quoting Skinner*, 489 U.S. at 619.  Thus, "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Chandler*, 520 U.S. at 314, *quoting Skinner*, 489

9

U.S. at 624.

In applying that balance to this case, there is no basis for maintaining that employees in public school have a lesser expectation of privacy than other public employees. In this era, all public employees can figure they might have to deal with security measures that other eras did not require, measures such as surveillance cameras, security check points, and the like. But there is nothing unique or common to educational employees that would create a reduced expectation that their workplace would compromise their more intimate privacy interests. And the Petitioners have already established in Part II-A that urinalysis testing implicates significant privacy interests. *See Baughman*; *Twigg*. As noted by the New York Court of Appeals, "[t]he act of discharging urine is a private, indeed intimate, one and the product may contain revealing information concerning an individual's personal life and habits for those capable of analyzing it." *In the Matter of Patchougue-Medford Congress of Teachers v. Board of Education of the Patchougue-Medford Union Free School District*, 70 N.Y.2d 57, 67, 510 N.E.2d 325 (1987). It is, as well, an affront to human dignity to command an individual, outside the context of individualized suspicion or a voluntary physical exam, to urinate in a container in order to prove his or her adherence to workplace rules. That is especially so when there is no adequate justification for the requirement.

As a result, the determinative issue in drug testing cases has really been whether the government can establish a sufficient rationale for its particular program. The United States Supreme Court has found that governmental interests may in some contexts be important enough to overcome the rule of individualized suspicion and permit drug testing on some other basis. In *Skinner*, the Court sustained mandatory testing of railroad employees who had been involved in a train accident. The government had established a record that tied train mishaps to employee drug

usage, and thus "surpassing safety interests" of obvious import warranted the testing program. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989), presented a challenge to a requirement of the U.S. Customs Service that any person seeking promotion or transfer to any position involving drug interdiction or the carrying of a firearm must submit to drug testing. The agency, faced with the grave task of mounting the "first line of defense" against the smuggling of drugs into the country, *id.* at 674, had a "compelling" interest in assuring that employees placed in those jobs would not be drug users. *Id.* at 670-71. In *Vernonia School District 47J v. Action*, 515 U.S. 646 (1995), a school district had determined that it had a serious and runaway "drug culture" among its students and that it had caused widespread disciplinary problems. The district also concluded that the leaders of the drug culture were athletes. The district thus imposed a random drug testing on those students engaged in interscholastic athletic competitions. Noting that students have a lesser expectation of privacy than the general public,[6] and that athletes in particular have a reduced privacy expectation,[7] the Court sustained the program.

Those "precedents establish that the proffered special need for drug testing must be substantial – important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." *Chandler*, 520 U.S. at 318. It is clear that the rationales that Respondents can muster in this case to support their drug testing regime do not rise to the level of specific importance needed

_____

[6]The Court cited to the requirements for various physical examinations and vaccinations imposed on public school students. *See also Board of Education v. Earls*, 536 U.S. 822 (2002) (public school students' diminished expectation of privacy a major consideration in sustaining drug testing of students participating in competitive extracurricular activities).

[7]For example, athletes undress and suit-up before practices and games and then undress, shower, and dress again afterwards, all in open locker and shower room arrangements.

to qualify for the special need exception to the requirement for individualized suspicion. Unlike the railroad workers in *Skinner*, school employees do not operate instruments capable of causing major destruction and the loss of human life. Unlike the border patrol agents in *Von Raab*, school employees do not carry dangerous weapons and are not subject to the perils (blackmail, intimidation, temptation) of organized crime and drug dealers. Also, unlike those agents, school personnel do not work in the field but rather work in a milieu where other employees – teachers, administrators, aides, counselors, etc. – can observe their condition and thus readily detect impairment. *See Von Raab*, 489 U.S. at 674. And unlike the school board in *Vernonia*, Respondents do not have a factual basis for concluding that they have a rampant problem with employee drug usage or impairment in the Kanawha County schools that would justify drug testing virtually the entire workforce.

Rather, the Respondents' Policy rests on interests akin to those rejected in *Chandler*. In that case, the Supreme Court invalidated a Georgia statute that required a candidate for designated public offices[8] to provide a certificate from a state-approved laboratory that the candidate had submitted to a urinalysis drug test within thirty days prior to qualifying for nomination or election and that the results were negative. The State attempted to justify the statute on the grounds that "the use of illegal drugs draws into question an official's judgment and integrity; jeopardizes the discharge of public functions, including antidrug law enforcement efforts; and undermines public confidence and trust in elected officials." 520 U.S. at 318. The State argued, too, that its law deterred unlawful drug

---

[8]Candidates for the following offices were affected: Governor, Lieutenant Governor, Secretary of State, Attorney General, State School Superintendent, Commissioner of Insurance, Commissioner of Agriculture, Commissioner of Labor, Justices of the Supreme Court, Judges of the Court of Appeals, judges of the superior courts, district attorneys, members of the General Assembly, and members of the Public Service Commission.

12

users from becoming candidates for and attaining high office. *Id.* at 318.[9]

The Court's response to that recitation of interests is significant to this case:

Notably lacking in respondents' presentation is any indication of a concrete danger demanding departure from the Fourth Amendment's main rule [requiring individualized suspicion]. Nothing in the record hints that the hazards respondents broadly describe are real and not simply hypothetical for Georgia's polity. The statute was not enacted . . . in response to any fear or suspicion of drug use by state officials[.]

*Id.* at 318-19. Repeating what had justified suspicionless drug testing in prior cases, the Court added that "Georgia asserts no evidence of a drug problem among the State's elected officials, those officials typically do not perform high-risk, safety-sensitive tasks, and the required certification immediately aids no interdiction effort. The need revealed, in short, is symbolic, not 'special,' as that term draws meaning from our case law." *Id.* at 321-22.

That is this case. Respondents cannot identify any particular drug problem among Kanawha County's school personnel, there is no "concrete danger" at hand demanding departure from constitutional strictures, and teachers, counselors, cooks, etc., do not perform high-risk, safety-sensitive tasks. What the Kanawha County Board of Education has done is symbolic, not special.

Lower courts have agreed. In striking down a program that required pre-employment drug testing for all employees in a school district, the Fifth Circuit observed that the program did not

_____

[9]The Court also summarized the characterization of the State's interests provided by the Eleventh Circuit, which had upheld the drug testing statute:

"[T]he people of Georgia place in the trust of their elected officials . . . their liberty, their safety, their economic well-being, [and] ultimate responsibility for law enforcement." Consequently, "those vested with the highest executive authority to make public policy in general and frequently to supervise Georgia's drug interdiction efforts in particular must be persons appreciative of the perils of drug use. . . . [T]he nature of high public office in itself demands the highest levels of honesty, clear-sightedness, and clear-thinking."

520 U.S. at 311 (internal citations omitted).

respond to any identified problem of drug use by teachers, their aides, or other employees; rather, the testing addressed a "general interest in a drug-free school environment," which did not constitute a "special need." *United Teachers of New Orleans v. Orleans Parish School Board*, 142 F.3d 853, 856-57 (5th Cir. 1998). Similarly, the district court in *Tannahill v. Lockney Independent School District*, 133 F. Supp. 2d 919 (N.D. Texas 2001), synthesized the Supreme Court's and lower courts' precedents to identify two contexts in which a "special need" could justify exceptions to the requirement for individualized suspicion in drug testing. The first situation embraces those in which the job in question involves "highly regulated functions concerning the public safety or special governmental roles," *see Skinner; Von Raab*. The second context are cases in which the employer can show "exigent circumstances and continued failure in attempts to alleviate the problem. *See Vernonia*. Furthermore," the court continued, "numerous courts have also made it clear that general concerns about maintaining drug-free schools or desires to detect illegal conduct are insufficient as a matter of law to demonstrate the existence of special needs." *Tannahill*, 133 F. Supp. 2d at 928; *see also Robinson v. City of Seattle*, 10 P.3d 452, 470 (Wash. App. 2000) (applying state constitution, court found city's definition of "safety-sensitive" was unconstitutional because it was not narrowly tailored to achieve a compelling state interest; city could require pre-employment testing for only those jobs that "genuinely implicate public safety").

To Petitioners' knowledge, no court has ever sustained the kind of sweeping random drug testing of public school employees that Respondents plan to implement. On the other hand, several cases have invalidated similar plans, although none were as broad as Respondents' Policy. *See United Teachers of New Orleans, supra* (invalidating pre-employment drug testing for all district employees); *Tannahill, supra* (striking down mandatory random drug testing for all students in

14

grades 6 through 12); *Georgia Association of Educators v. Harris*, 749 F. Supp. 1110 (N.D. Ga. 1990) (finding unconstitutional statute requiring all applicants for positions in state government or in public education to submit to a drug test); *Robinson v. City of Seattle, supra*; *Patchogue-Medford Congress of Teachers, supra* (requiring all probationary teachers to submit to random drug testing violated the federal and state constitutional provisions prohibiting unreasonable searches).

In his now famous dissent in *Olmstead v. United States*, 277 U.S. 438 (1928), Justice Brandeis set forth what has since become the basis for modern Fourth Amendment doctrine. He also provided us with a warning, which seems particularly apt for this case:

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding.

*Id.* at 479. However well-meaning the Respondents are, their Policy "diminishes personal privacy for a symbol's sake." *Chandler*, 520 U.S. at 322. The Fourth Amendment and Article III, § 6 shield us from such overreaching intrusions by our governments. *Id.*

C.    The Public Interest Supports Issuing the Injunction.

*Twigg*, of course, has defined the public policy of the State as opposed to random drug testing of employees except in the narrowest of circumstances. Constitutional rights, enshrined with great fanfare in our federal and state Bills of Rights, hang in the balance for hundreds of Kanawha County educational employees. Meanwhile, the Respondents have in place a Policy that adequately addresses their legitimate aim to prevent drug usage or impairment in the County's schools. Surely, the public interest favors a preliminary injunction to forestall implementation of the Board's new Policy while the parties develop a complete record in this case.

15

## CONCLUSION

For the foregoing reasons, this Court should grant Petitioners' motion for a preliminary injunction and enjoin Respondents from enforcing the "Employee Drug Use Prevention Policy" and from conducting random testing of individuals' bodily fluids in violation of their constitutional rights.

American Federation of Teachers - West
Virginia, AFL-CIO, et al.,
    By counsel

Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

Jeffrey G. Blaydes (SBID #6473)
Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV  25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
    *Counsel for Petitioners*

16

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

       Petitioners,

v.              Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

       Respondents.

**CERTIFICATE OF SERVICE**

  I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing

MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR A PRELIMINARY

INJUNCTION, by placing a true copy, postage prepaid, in the United States mail, on this 5th day of

December, 2008, upon the following:

      Kanawha County Board of Education
      c/o Ronald Duerring, Ed.D., Superintendent
      200 Elizabeth Street
      Charleston, WV 25311

      Kanawha County Schools
      Ronald Duerring, Ed.D., Superintendent
      200 Elizabeth Street
      Charleston, WV 25311

Ronald Duerring, Ed.D., Superintendent
Kanawha County Schools
200 Elizabeth Street
Charleston, WV  25311

James Withrow, Esquire
Kanawha County Board of Education
200 Elizabeth Street
Charleston, WV  25311

Jeffrey G. Blaydes

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

                Petitioners,

v.                                   Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

                Respondents.

## MOTION FOR WAIVER OF INJUNCTION BOND
## OR FOR SETTING BOND AT NOMINAL AMOUNT

By counsel, Petitioners, American Federation of Teachers - West Virginia, AFL-CIO, Judy

Hale, Frederick Albert, Cynthia Phillips and Gregory Dodd, move for a waiver of the requirement

that Petitioners give security for the preliminary injunction they seek in the above-captioned case.

In the alternative, Petitioners move that the Court set bond at a level that is no more than a nominal

amount.  In support of their motion, Petitioners submit the accompanying memorandum.

                                American Federation of Teachers West
                                <u>Virginia, AFL-CIO, et al.</u>
                                  By counsel

Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

Jeffrey G. Blaydes (SBID #6473)
Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV 25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
*Counsel for Petitioners*

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                                                   Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

### CERTIFICATE OF SERVICE

I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing MOTION

FOR WAIVER OF INJUNCTION BOND OR FOR SETTING BOND AT NOMINAL AMOUNT,

by placing a true copy, postage prepaid, in the United States mail, on this 5th day of December, 2008,

upon the following:

> Kanawha County Board of Education
> c/o Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV 25311
>
> Kanawha County Schools
> Ronald Duerring, Ed.D., Superintendent
> 200 Elizabeth Street
> Charleston, WV 25311
>
> Ronald Duerring, Ed.D., Superintendent
> Kanawha County Schools
> 200 Elizabeth Street
> Charleston, WV 25311

James Withrow, Esquire
Kanawha County Board of Education
200 Elizabeth Street
Charleston, WV  25311


Jeffrey G. Blaydes

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

Petitioners,

v.                                        Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

Respondents.

**MEMORANDUM IN SUPPORT
OF PETITIONERS' MOTION FOR
WAIVER OF INJUNCTION OR FOR
<u>SETTING BOND AT A NOMINAL AMOUNT</u>**

West Virginia Code §53-5-9 ordinarily requires that a court require security from a moving party before issuing a preliminary injunction.  That requirement, however, may be waived if "good cause" is shown.  <u>Kessel v. Leavitt</u>, 204 W.Va. 95, 511 S.E.2d 720 (1998); <u>Hall v. McLuckey</u>, 134 W.Va. 595, 60 S.E.2d 280, 289 (1950).  In addition, the statute grants complete discretion to the issuing court in setting the amount of security, and in appropriate circumstances, a court can therefore require a bond of only a nominal amount.  <u>See, e.g.</u>, <u>Jeffreys v. My Friend's Place, Inc.</u>, 719 F. Supp. 639, 649 (M.D. Tenn. 1989).  Petitioners' motion for a preliminary injunction in this case presents a case of good cause and equitable circumstances such that this Court should either waive the bond or set it at an amount that is *de minimis* and does not effectively prohibit Petitioners from obtaining the preliminary injunction that they and the public interest so desperately require.

In construing F.R.C.P. 65(c), which has the same bond requirement as §55-3-9, numerous federal courts have held that the requirement may be waived or the bond set at a nominal amount.

1

E.g., United States v. Bedford Assoc., 618 F.2d 904 (2nd Cir. 1980); La Plaza Defense League v. Kemp, 742 F.2d 792 (S.D.N.Y. 1990); Jeffreys, supra. "Despite the literal language of Rule 65(c), appropriate circumstances . . . excuse the issuance of a preliminary injunction without a bond." Smith v. Board of election Commissioners, 591 F. Supp. 70, 72 (N.D. Ill. 1984). Accord, People of California v. Tahoe Regional Planning Agency, 766 F.2d 1319, 1325-26 (9th Cir. 1988); Wayne Chemical, Inc. v. Columbus Agency Service Corp., 567 F.2d 692, 701 (7th Cir. 1977); Governing Council of Pinoleville Indian Community v. Mendocino County, 684 F. Supp. 1042, 1047 (N.D. Calif. 1988). Factors that courts have considered in deciding whether to require a bond or to require only a nominal amount have included the possible loss to the enjoined party, the hardship that a bond would impose on the applicant, the impact of a bond on the enforcement of constitutional rights, and the public interest. E.g., Crowley v. Local No. 82, 679 F.2d 978 (1st Cir. 1982); Smith, supra. In addition, from the cases cited above, and others not cited, courts are more likely to grant waivers when these are governmental officials or agencies and the case is set in a noncommercial context. Both of those circumstances typically arise in law suits where, as here, a petitioner seeks to enforce constitutional rights.

In this case, all of those factors that courts consider relevant weigh heavily toward a waiver of the bond or a bond of a nominal amount. Setting the bond at more than a nominal amount would therefore be tantamount to its denial -- and to the violation of compelling constitutional rights. In this matter, the constitutional rights of public school teachers and other personnel are at risk. Moreover, Petitioners lack any significant resources to cover a substantial bond. In contrast, the grant of the motion for preliminary injunction places no hardship on Respondents. Indeed, Respondents will not suffer any financial loss if the motion is granted. If this process is stopped *via* injunction, Respondents will expend no resources. Thus, there is not a need for security in this case. Kessel, supra. at 786. However, if the random selection policy is implemented, it will in fact produce additional costs for Respondents including implementation and administration of the Policy.

For the foregoing reasons, the Court should not allow the bond requirement in West Virginia

Code §53-5-9 to operate as a bar to the important relief that Petitioners seek in their preliminary injunction motion.

American Federation of Teachers West
Virginia, AFL-CIO, et al.
  By counsel

Robert M. Bastress, Jr., Esquire (SBID #263)
Post Office Box 1295
Morgantown, WV 26507-1295
(304) 293-5308 telephone
(304) 293-6891 facsimile
*Counsel for Petitioners*

Jeffrey G. Blaydes (SBID #6473)
Mark W. Carbone (SBID #6291)
CARBONE & BLAYDES, P.L.L.C.
2442 Kanawha Boulevard, East
Charleston, WV 25311
(304) 342-3650 telephone
(304) 342-3651 facsimile
  *Counsel for Petitioners*

3

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMERICAN FEDERATION OF TEACHERS -
WEST VIRGINIA, AFL-CIO, JUDY HALE,
its President, FREDERICK ALBERT, CYNTHIA
PHILLIPS and GREGORY DODD, members and
representatives of similarly situated individuals,

     Petitioners,

v.            Civil Action No. 08-MISC-421

KANAWHA COUNTY BOARD OF EDUCATION,
KANAWHA COUNTY SCHOOLS and,
RONALD DUERRING, Ed.D., Superintendent,

     Respondents.

### CERTIFICATE OF SERVICE

  I, Jeffrey G. Blaydes, do hereby certify that I have served a copy of the foregoing

MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR WAIVER OF INJUNCTION

OR FOR SETTING BOND AT A NOMINAL AMOUNT, by placing a true copy, postage prepaid,

in the United States mail, on this 5th day of December, 2008, upon the following:

    Kanawha County Board of Education
    c/o Ronald Duerring, Ed.D., Superintendent
    200 Elizabeth Street
    Charleston, WV  25311

    Kanawha County Schools
    Ronald Duerring, Ed.D., Superintendent
    200 Elizabeth Street
    Charleston, WV  25311

    Ronald Duerring, Ed.D., Superintendent
    Kanawha County Schools
    200 Elizabeth Street
    Charleston, WV  25311

    James Withrow, Esquire
    Kanawha County Board of Education
    200 Elizabeth Street
    Charleston, WV  25311

              Jeffrey G. Blaydes